SHERWOOD vs. SHERWOOD.

EQUITY: WILLS: EVIDENCE: PLEADING. *(1) Wills construed, but not reformed. (2, 3) Extrinsic evidence in construing will. (4, 5) Complaint held not sufficient to support the construction claimed.*

1. Equity will not *reform* a will, by changing its language or adding provisions to make it accord with the testator's intention; but, where its words permit, will give them a *construction* in accordance with such intention.

2. Extrinsic evidence of the testator's intention is not admissible for the purpose of explaining, construing or adding to the terms of a will; but such intention must be ascertained from its *words* read in the light of the *circumstances* surrounding the testator when he made it.

3. Evidence of such surrounding circumstances is admissible when the will contains inconsistent provisions; and also in case of a *latent* ambiguity. *Morgan v. Burrows, ante,* p. 211.

4. The complaint alleges, as to the will here in question, that the testator, at the time of making it, and thereafter until his death, owned lot 10 in a certain block; that the plaintiff at those times owned, and has ever since owned, in fee simple, lot 9 in the same block; that by said will the testator devised said lot 10 to plaintiff; but that, in drawing the will, lot 10 was by mistake described as lot 9; that the will contained *no other mention or description of said lot* 10; and that at the time of the making of said will plaintiff was, and ever since has been, in the actual possession of said lot. *Held,* on demurrer, that there is nothing in the will, as thus described, upon which to base a construction of it as devising lot 10 to plaintiff.

5. The complaint also alleges that the misdescription of the lot devised to plaintiff is apparent on the face of the will; but it does not refer to any clause of the will which will support such an averment. *Held,* that the averment is of a mere conclusion of law, and not confessed by the demurrer.

APPEAL from the Circuit Court for *Winnebago* County. The complaint alleges that Daniel O. Sherwood, the son of the plaintiff, died in February, 1858, having previously executed his last will and testament, in and by which he devised to the plaintiff lot 10 in block 20 in the city of Oshkosh, of which lot he was the owner in fee when he made his will, and continued such owner until his death; and that in May, 1858, said will was duly admitted to probate by the proper court. It then proceeds as follows:

" That in drawing said will there was a mistake made in drafting and drawing the same, in describing said lot ten, block twenty, and the same was, through error and mistake, described therein as lot nine, being the lot owned by the plaintiff; that the said Daniel O. Sherwood, in said will and testament, gave and bequeathed to the plaintiff said lot ten, but by mistake the same was erroneously described as lot nine in said will; and that in and by said will the said Daniel O. Sherwood made no other mention or description of said lot ten, or of any lot or land in said block twenty, except as herein stated; and that plaintiff, at the time of the making of said will and testament, and at the time of the decease of said Daniel O. Sherwood, was, and has been ever since, the owner in fee simple of lot nine in said block twenty, which adjoined said lot ten; and that at the time of making said will and testament the plaintiff was, and ever since has been, in the actual possession of said lot ten, and no party or person has, since the death of her said son Daniel Sherwood, made any claim to said lot or claimed to have any interest therein, until about one year ago, when such mistake in such description was first discovered, and was first known to the plaintiff or any other party or person."

After stating facts which show that if lot ten is intestate property, an undivided one-half thereof has descended to and belongs to the defendant, it is alleged that the defendant claims to be the owner of such undivided half, and that his co-heir, one Martha Ellsworth, has conveyed to the plaintiff all her interest in such lot. The prayer for judgment is: " That such mistake in the description of said lot, in said will, be corrected; that it be adjudged that in and by said will there was given and devised to the plaintiff, lot No. ten, instead of lot nine, of said block twenty, 1st addition to Oshkosh; and that the plaintiff is the owner in fee simple of said lot ten of said block twenty, and that the said cloud upon the plaintiff's title to said lot be removed, and that the defendant has no interest therein; and that the plaintiff have such other and further relief as she shall be entitled to in the premises."

A demurrer to the complaint as not stating a cause of action, was overruled; and defendant appealed from the order.

*Charles W. Felker*, for the appellant, argued, 1. That courts of equity have no jurisdiction to correct a mistake in a will after probate. Extrinsic evidence is never admitted to alter, detract from or add to the terms of a will; and courts of equity are not permitted to make wills for dead men. *Kurtz v. Hibner*, 55 Ill., 514; *Mann v. Mann*, 1 Johns. Ch., 231; *Archer v. Meadows*, 33 Wis., 167, 172. Equity has no jurisdiction to set aside the probate of a will, or to correct a mistake therein, or to avoid it on the ground of fraud, mistake or forgery, after probate; ,but jurisdiction of such matters belongs exclusively to courts of probate. *Case of Broderick's Will*, 21 Wall., 503; *California v. McGlynn*, 20 Cal., 263, 266. In construing a will, equity pays no attention to the instructions given for preparing it. 2 Williams on Ex'rs (6th Am. ed.), 1165, and cases in note. 2. That the averment in the complaint that the misdescription of the land is apparent on the face of the instrument, is a mere conclusion of law, and not admitted by the demurrer. Daniell's Ch. Pr. (3d Am. ed.), 566; Story's Eq. Pl., § 452; *Stow v. Russell*, 36 Ill., 19–29; *Newell v. Bureau Co.*, 37 id., 256. The construction of the will is for the court. Parsons on Con., 491–2, and note (b); *Rdnney v. Higby*, 5 Wis., 70; *Neilson v. Harford*, 8 M. & W., 806, 823. The will not being set out either in terms or in substance, how can the court construe it, or say that a mistake appears on its face? Story's Eq. Jur., § 179; 2 Williams on Ex'rs, 1153, and note; *Thayer v. Boston*, 15 Gray, 347; *McAlister v. Butterfield*, 31 Ind., 25. 3. That the plaintiff's laches was a bar to the relief sought.

*Gabe Bouck*, for the respondent, contended, 1. That a court of equity may correct mere mistakes in a will. *Wood v. White*, 32 Me., 340; *First Parish v. Cole*, 3 Pick., 237, and cases cited in note; *Minot v. Boston Asylum*, 7 Met., 416; *Winkley v. Kaime*, 32 N. H., 268; *The Domestic, etc., Appeal*, 30 Pa. St., 425; 2 Dallas, 70; *Riggs v. Meyers*, 20 Mo., 239; *Allen v. Lyons*, 2 Wash. C. C., 475; *Powell v. Biddle*,

1 Am. Dec., 263; *Selwood v. Mildmay*, 3 Ves., 306; *Door v. Geary*, 1 Ves. Sr., 255; *Anstee v. Nelms*, 38 Eng. L. & E., 314; *Charter v. Charter*, 1 Eng. R., 249; Kerr on Fraud, 448, and notes; Jarman on Wills, *330, *363, *372.  2. That there was no laches.

LYON, J.  This is substantially an action to remove a cloud from the plaintiff's title to lot 10 in block 20 in the city of Oshkosh, which, the plaintiff alleges in her complaint, was devised to her by her son, the late Daniel O. Sherwood, in and by his last will and testament, which since his death has been duly admitted to probate.  The cloud is alleged to have been produced by the fact that in said will the lot is misdescribed as lot 9 in block 20.  It is further alleged that the defendant claims to be the owner of an undivided one-half of lot 10; and facts are stated, showing that his claim is valid, if the lot is intestate estate.  The plaintiff prays that the cloud may be removed by correcting the alleged misdescription in the will, and by the judgment of the court that lot 10 is therein devised to the plaintiff notwithstanding such misdescription. Either of these modes, if adopted, will operate to quiet and confirm the plaintiff's title to lot 10.

I.  An extended examination of the cases and authorities bearing on the question, not only those cited by both of the learned counsel, but many others not cited, has satisfied us that it is not a proper exercise of the powers of a court of equity to reform a will by adding provisions thereto to make the will accord with the real intentions of the testator.

We have seen but a single case in which a court has assumed to correct a mistake in a will.  That is the case of *Wood v. White*, 32 Me., 340.  The will contained this bequest: "I give to J. Wood, of Belfast, the whole amount, principal and interest, he may owe me at the time of my decease, which is secured to me by mortgage," etc.  The facts were, that no person named J. Wood owed the testator, or ever had any dealings with him, or claimed the legacy.  The complainant, George Wood, of Belfast, was married to the testa-

tor's niece, was his warm personal friend, and owed him a debt secured by mortgage. The executors, who were the defendants in the action, answered admitting that the testator intended George instead of J. Wood, and did not contest the action. Besides, it appeared that the testator, when abroad, had addressed letters to the complainant by the name of J. Wood. On these facts the court decreed that the will be corrected. The opinion contains neither argument nor reference to authority, and the cases cited to support the decree do not support it. The case was probably a proper one for construing the will as containing a legacy to George Wood; but the decision is of little value as authority for reforming wills.

Judge Story says, in a general way, that courts of equity have jurisdiction to correct wills; but it is apparent from his discussion of the subject and the cases which he cites, that he does not mean that the court will reform and change the language of a will, but that it will carry out the intention of the testator in a proper case by giving construction to the words of the will in accordance with such intention. He says: "In regard to mistakes in wills, there is no doubt that courts of equity have jurisdiction to correct them *when they are apparent on the face of the will, or may be made out by a due construction of its terms;* for in cases of wills the intention will prevail over the words. But then the mistake must be apparent on the face of the will, otherwise there can be no relief." 1 Eq. Jur., § 179. And in supplemental § 180 a, by Judge Redfield, it is laid down that the American courts have not interfered to correct alleged mistakes in wills. A similar statement will be found in 1 Redf. on Wills, 571.

The reason why courts of equity will not interfere in such cases seems to be, that an action to reform a written instrument is in the nature of an action for specific performance, and the making of a will being a voluntary act, there is no consideration, as in actions to reform deeds or contracts, to support the action. Hence it is said in a note by the editor of Wigram's treatise on extrinsic evidence in aid of wills, that "vol-

unteers under wills have no equity whereon to found a suit for specific performance." O'Hara's 2d Am. ed., 47.

There is another reason why a court of equity should not reform a will by correcting a mistake therein, after the will has been admitted to probate. Such probate is the judgment of the court that the instrument, just as it is written, is the last will and testament of the testator; and on well settled principles that judgment cannot be attacked collaterally. While the judgment of the proper court admitting the will to probate remains in force, no court is authorized, in the absence of fraud, to adjudge that the instrument, or any of its provisions, is not the will of the testator. Neither can it add provisions not written in the will. It can only construe the instrument as it is written.

To avoid possible danger of misapprehension, it may be remarked that it is probably competent for the probate court to reject any portion of an instrument propounded as a will, on proof that such portion was inserted therein against the desire or without the knowledge of the testator, and to admit the residue to probate. For this purpose, extrinsic evidence of the intention of the testator is necessarily admissible. The rule is, that if the question is one of fraud, or undue influence (which is a species of fraud), or *devisavit vel non*, any relevant parol evidence is admissible. But it would seem that the latter question can only arise before the will is probated, while the question of fraud may be tried at any time when rights are claimed under the will, whether the claim be made at law or in equity.

The principle of the above rule is obvious. The probate court having jurisdiction to determine that the whole instrument is or is not the last will of the person who is alleged to have made it, must logically have the power to determine, on proper proofs, that a portion thereof is his last will, and the residue is not. But the rule does not authorize the probate court, or any other court, to supply omissions in the will; for that would be to make a will for the testator which he has not

made for himself in the form essential to its validity. On this general subject see O'Hara's notes above cited, p. 281, Wigram's treatise, and cases cited.

II. The remaining question is, whether the will admits of the construction that the testator therein devised lot 10 to the plaintiff. One of the rules by which this question must be determined is, that evidence of the intention of the testator, extrinsic to the will itself, is not admissible for the purpose of explaining, construing or adding to the terms of a will; but such intention must be spelled out from the words of the will itself, read in the light of the circumstances surrounding the testator when he made it. In cases where there are inconsistent provisions in the will, evidence of such circumstances is always admissible.

The above rule excluding extrinsic evidence of the intention of the testator has been applied in a large number of cases in which such evidence has been offered to vary or contradict wills, to supply omissions or correct mistakes therein, or to explain patent ambiguities. Wigram lays down the rule as follows: "If a testator's words, aided by the light derived from the circumstances with reference to which they were used, do not express the intention ascribed to him, evidence to prove the sense in which he intended to use them, is, as a general proposition, inadmissible; in other words, the judgment of a court in expounding a will must be simply *declaratory* of what is *in* the will." p. 179. Numerous English cases illustrating the application of the rule are cited in note 2, p. 182 of the treatise above cited.

In *Morgan v. Burrows, ante,* p. 211, such evidence was held admissible to explain a latent ambiguity; and the distinction is there considered between such a case and those cases which are within the rule. Many American cases in which the rule has been applied, will be found cited in the brief of counsel for the appellant in that case.

We are now to determine whether there is any provision or clause in the will under consideration, from which, when considered in the light of surrounding circumstances, the court

can say that it contains a devise to the plaintiff of lot 10. Inasmuch as the question arises on demurrer to the complaint, we have no knowlege of the contents of the will beyond what is stated in the complaint. It is averred therein that, by mistake, lot 9 is the lot described in the will instead of lot 10, and that the testator "made no other mention or description of lot 10, or of any lot of land in said block 20, except as herein stated." Thus it is substantially alleged that the only designation or description in the will of the lot devised to the plaintiff is "lot 9." Hence there is nothing in the will upon which to predicate a construction that lot 10 was therein devised to her.

It might be otherwise had the testator inserted in his will any other description or identification of the lot which he intended to devise to the plaintiff. For instance, had he devised to her "lot 9 in block 20, occupied by A;" or, "which I purchased of B;" or even "*my* lot 9 in block 20," and had it appeared that lot 10 alone was occupied by A, or that the testator purchased lot 10 alone of B, or that lot 10 was the only lot owned by the testator in block 20, in either case extrinsic evidence would be admissible to show the fact; and if established, the court would be justified in construing the will as containing a devise to the plaintiff of lot 10. This does not contravene the rule which rejects extrinsic evidence of the intention of the testator when offered to vary or add to a will; for in either of the cases above supposed, the will itself contains two inconsistent descriptions of the lot devised, the one true and the other false; and the court would merely resort to extrinsic evidence to ascertain which was the true description, and would construe the will accordingly. This is but an application of the familiar maxim, *falsa demonstratio non nocet*, sanctioned by all of the authorities. Nearly all of the cases cited by the learned counsel for the plaintiff sustain these views.

We have not overlooked the averment in the complaint that the misdescription of the lot devised to the plaintiff is apparent on the face of the will. No clause of the will which will support the averment is referred to in the complaint, and we must

regard it as a mere conclusion of law from facts not pleaded. It is a familiar rule that such an averment is not confessed by a demurrer to the pleading in which it is inserted.

III. The learned counsel for the defendant claimed in argument, that it appears by the complaint that the plaintiff has been guilty of laches, and hence can have no relief in a court of equity. We think that question is not in the case; and if it is, we think the complaint fails to show any unreasonable delay to bring this action.

Our conclusion upon the whole case is, that the complaint in its present form does not state a cause of action, and that the demurrer thereto should have been sustained.

*By the Court.* — Order reversed, and cause remanded for further proceedings according to law.

RYAN, C. J., took no part.