LEVERETT CROOKS ET AL. v. EMELINE A. 1. WHITFORD.

*Ejectment—Proof of foreign deed—Identity of premises conveyed—Tax-title—Incomplete devise of land.*

The right to recover in ejectment depends on the plaintiff proving title in himself; and the rejection, for insufficient authentication, of a foreign deed offered by defendant is therefore immaterial.

Where proof of a foreign deed is to be made, it is competent to establish the position of the certifying officer by proof of the foreign law.

Ejectment was brought for land in town two south of range ten west in Kalamazoo county, being in the township of Comstock, and the plaintiff, in support of his title, introduced a deed purporting to convey the same description of land in the township of that name, but describing it as in range nine. *Held*, that the discrepancy was not sufficient ground for excluding the deed, but that extrinsic evidence was admissible to identify the land conveyed with the premises in suit.

A tax title is invalid if the assessor's certificate attached to the roll under which the tax was levied materially differed from that prescribed by statute at the time the tax was levied. So *held* where a statutory form permitting the assessor to rely upon the sworn valuation made by the tax-payer was followed after the statute had been amended so as to require the assessor himself to estimate the value of the property.

A tax deed cannot be held invalid on the ground that the tax exceeded the regular statutory limit, if it appears that during the period within which it was levied extraordinary levies were authorized to which this limitation did not apply, and which might have justified the tax.

Where there are no words of devise to invest executors with any estate, a sale on execution against them cannot convey title to premises devised.

A testator requested his executors "to sell and dispose of the following described land" but left out the description. *Held*, that evidence that he owned a parcel of land not specifically disposed of was not admissible for the purpose of supplying the missing description.

Parol evidence cannot be resorted to for the purpose of supplying a description of land omitted from a devise.

A devise from which the subject-matter has been omitted· is not open to construction. Whether the testamentary intent can be inferred by the jury from the extrinsic fact that the testator left certain property undisposed of—Q.

Error to Kalamazoo. Submitted Oct. 21. Decided Jan. 5.

EJECTMENT. Defendants bring error. Affirmed.

*Brown, Howard & Roos* for plaintiffs in error. Taxes are void if they exceed the statutory limit and there is nothing to show that the collection of any extra sum was ordered: Cooley on Taxation 295; *Lacey v. Davis* 4 Mich. 140; *Case v. Dean* 16 Mich. 12; *Buell v. Irwin* 24 Mich. 145; *Wattles v. Lapeer* 40 Mich. 624; *Silsbee v. Stockle* 44 Mich. 561.

*Breese & Stearns* for defendant in error.

GRAVES, C. J. The defendant in error on a jury trial in ejectment ·recovered judgment for the south half of the southwest quarter of section number five in township number two south of range number ten west in the county of Kalamazoo. She claimed under tax titles based on sales for unpaid taxes for the years 1846, 1849, 1850, 1851 and 1852, and Crooks, one of defendants below, claimed under the original title from the United States. His co-defendant . Weston was merely his tenant and had no independent right.

In tracing his title Crooks offered the record to prove a conveyance from the patentee to Aaron Benedict, but the court rejected it because the deed purported to have been executed and acknowledged in New Jersey and was not accompanied by such·a certificate of authentication as the law made necessary (Comp. L. § 4212), the alleged defect

being that it did not appear that the certifying officer possessed the requisite qualification, or in other words was "clerk or other proper certifying officer of a court of record of the county or district within which such acknowledgment was taken." The question argued on this ruling is in this case purely speculative. The result of the action could not be affected by it and no incidents are perceived to give it importance. The plaintiff's right to recover did not depend in any way on the ability or inability of the defendants to trace the original title to themselves. Her right depended on her showing a good title in herself derived from the tax proceedings, and the fate of the defence of course hung on that inquiry. No doubt it was competent to make proof of the law of New Jersey, and in that way establish that the clerk occupied the position of "clerk or other proper certifying officer of a court of record of the county or district within which" the "acknowledgment was taken." As the point agitated is devoid of materiality we shall not consider it.

Seth Wheelock, the father of Mrs. Whitford, died in June, 1868, seized of these tax titles. He left a widow, Christina Wheelock, and five children, of whom John W. Wheelock was one. He made a will which was duly proved and established. Mrs. Whitford in furtherance of her case offered in evidence the quitclaim deed of her brother, John W. Wheelock, containing the following terms of description: "All the following described land situate in the township of Comstock, county of Kalamazoo and State of Michigan, known and described as follows: The south half of the southwest quarter of section 5, in town two south of range 'nine' west."

The defense contended that the deed did not apply to the land in question and requested a ruling to that effect. But the court refused and admitted the evidence. The real point of the objection was that the description contained a verbal discrepancy. The land in controversy lies in the township of Comstock but not in township number "nine."

The territory of the organized township of Comstock coincides with surveyed township number "ten," and surveyed township number "nine" comprises the territory of the organized township of Charleston in the same county. To appropriate the deed to its true subject-matter it was requisite to reject one of the two repugnant terms, either the appellation or the number, and it is manifest that rejection of the number would leave an accurate description of the premises claimed.

For the purpose of ascertaining to what it was meant the instrument should apply, and which of the two locative calls, the name or the number, should be rejected, it was competent to refer to such interior and surrounding incidents as reason and justice recognize as appropriate in such cases. The exception raises no question relating to the fitness of the extrinsic showing. The subject noticed has been sufficiently considered in former cases. *Ives v. Kimball* 1 Mich. 308; *Anderson v. Baughman.* 7 Mich. 69; *Johnstone v. Scott* 11 Mich. 232; *Cooper v. Bigly* 13 Mich. 463; *Slater v. Breese* 36 Mich. 77, and authorities cited. See, also, *Winkley v. Kaime* 32 N. H. 268.

The ruling excepted to was not erroneous.

Each of the five tax deeds was assailed for alleged defects in the proceedings. But as the consequence would be the same in case any one of the deeds was valid and the rest invalid the circuit judge ruled that the deed for the taxes of 1846 was not impeached and was *prima facie* good, and declined to pass on the others or submit the facts adduced for their impeachment to the jury.

Among other objections against the levy of 1846 was one founded on the assessing officer's certificate appended to the roll. It reads as follows:

"We do hereby certify that we have set down in this assessment roll all the real estate in the township of Comstock, liable to be taxed, according to our best information, and that with the exception of those cases in which the valuation of said real estate has been sworn to by the owner or possessor thereof, we have estimated it at a sum which we believe to be its just value thereof, and also that the assessment roll

contains a true statement of the aggregate amount of the taxable personal estate of each and every person named in said roll, and that, except in those cases where the value of the personal estate has been sworn to by the owner or possessor, we have estimated the same at its just value, according to our best information and belief. *Dated, Comstock, May* 9, 1846."

This certificate follows exactly the original provisions of the act of 1843 (Laws 1843, p. 60, §§ 14, 19). By the provisions of that law the party to be taxed might tender his own affidavit of the value of his property and in case he did so the officers were required to rate his property at the value so sworn to (section 14, *supra*) and were not permitted to apply their own judgments to the valuation. Hence in giving the form of the certificate the Legislature provided that the officers were not to certify at all that they had estimated or valued the property which the tax-payers had estimated for themselves. Section 19, *supra.* The Legislature in 1845, however, amended this regulation so as to confine the taxpayer's power to fix the value, for himself, to personal property, and the clause in the certificate, excluding cases in which the value of real estate had been sworn to, was stricken out. Act No. 67, Laws 1845, § 7, pp. 86, 87. The effect of this change was to require the assessing officers to apply and exercise their own judgments in getting at the valuation of real property without any exception and to make it their duty under their official oaths to certify that, according to their best information, they had estimated all the real estate in the township liable to be taxed, at a sum which they believed to be the just value thereof. Such was the law when the tax of 1846 was assessed.

But the certificate demonstrates that it was not followed. Through this document we are informed by the officers that they permitted such tax-payers as chose, to fix the value of their own real estate for themselves. True it does not affirmatively appear that any one did so. Neither does it appear that no person took advantage of the opportunity. The fact, however, is plain that the certificate was a material departure from the statute. It does not show that the lands

in question were valued according to law. And it does not show expressly that any of the real estate in the township was so valued. If the officers in any case estimated for themselves, the fact is left to inference or implication, and such is not the mode of certifying which the statute required. The law was imperative that the certificate should be express. The case is within the principle of *Silsbee v. Stockle* 44 Mich. 561, and other cases. It follows that in sustaining the deed for the taxes of 1846 the judge erred.

But it still remains to inquire whether the result ought to be disturbed for this miscarriage. The only ground of complaint suggested against the deed given for the taxes of 1849 is that the State tax for that year exceeded two and one-half mills on the total valuation, and the argument is that the law expressly limited the imposition of taxes for State purposes to two and a half mills, and Act No. 2 of 1848 is relied on (Laws 1848, p. 2). By the literal terms of that statute the limitation was confined to levies " for the annual support and ordinary expenses of the State government." It was inapplicable and intended to be inapplicable to the liabilities and existing obligations of the State in respect to the public debt, and also to such other demands upon the taxing power as should not fall within the sense of the qualification. It was not supposed that the State was precluding itself from performing its absolute engagements or positive duties, and from a period some time prior to 1848 down to a time long subsequent to 1849 provisions were extant for levies on account of our State liabilities connected with the five million loan, and these provisions were so framed as to allow enough to be raised at any juncture to supply whatever amount our other sources of revenue should lack. See Act 73 of 1843, p. 150; Act 24 of 1848, pp. 19, 20; Act 173 of the same session, p. 228, §§ 6, 7; Act 221, same session, p. 337.

It will be seen on referring to these regulations that they made no appropriation of definite sums, nor undertook to specify in advance what number of dollars should or might be raised. Nothing of the kind was practicable; all this

depended on the vicissitudes of the future. It was assumed that needs would occur for varying amounts incapable of being estimated in advance, and they were provided for by requiring the Auditor General on their occurrence to make the proper estimates and to send to each county its due quota, and by requiring the county to levy the amount. These levies and their amounts cannot be ascertained by reading the statutes. They can only be traced by having recourse to the determination and action of the Auditor General under the statutes and the consequent proceedings of the counties.

In view of these considerations it is evident that the foundation of the objection fails. It does not appear that the tax for 1849 exceeded the limit allowed by law. It may have included items for these extra purposes to an amount sufficient to cover the supposed excess, and it is a fair presumption that it did so. And as no other objection is pretended and the law rendered the deed *prima facie* evidence of the regularity of the proceedings (Rev. St. 1846, ch. 20 § 82; Laws 1847, p. 120) this title cannot be ignored. The consequence is that although the judge erred in upholding the deed for the taxes of 1846 the error worked no prejudice. The result is sustained by the deed for the taxes of 1849. The objections to the other tax deeds cease to be material.

Seth Wheelock appointed his wife Christina to be executrix and P. H. Whitford to be executor of his will, and the first testamentary provision is in these words: "I request my executors to sell and dispose of the following described land and invest the proceeds of the same in U. S. bonds, the use of which I wish my wife Christina to have during her natural life, after which it is to be equally divided among my lawful heirs." The testator then gives his homestead, being forty acres on section thirty-two, to his wife for life, and the remainder in fee to his son John Wesley; and his personal property after payment of his debts to his wife during life and then over to his heirs.

In regard to the land the testator intended should be converted into personalty as mentioned in the first provision,

47 Mich.—19

the will is a blank. The instrument contains no calls whatever, whether accurate or inaccurate, to localize or identify the subject-matter. The defendants below offered evidence to prove that the testator Seth Wheelock at the date of the will and also at his death owned no other real estate than the above-mentioned homestead and the southwest quarter of section 5 in township 2 S. of range 10 W., the object being to establish by such showing that said first testamentary provision was intended to apply to and include the land on section 5 and hence also the premises in controversy. They further offered to prove in the same connection that in 1874 Mr. Severens recovered judgment in the court below against the persons named as executors in the will; that an execution was issued thereon and levied on the land now in question; that the land was sold under that levy to Mr. Severens who assigned the certificate to Mr. Crooks, one of the defendants below; and that the sheriff ultimately made a deed to him in accordance with the levy and sale, and that whatever title was instituted by such proceedings is still owned by Crooks. The circuit judge rejected the offer. The ruling was correct.

It is unnecessary to discuss the various objections to the offer which suggest themselves. Had the evidence been admitted it would not have shown that the execution sale passed any interest. The ground of the offer was that it would follow from the fact of the testator's want of ownership of any real property except the homestead and the land on section five, that he must have intended by the blank provision to appropriate the parcel in that section. Hence according to the argument the provision in the will would have to be read as though that land was actually described in it. For the purpose of the question let the provision be so read, and the result is that it does not aid the defense. It gives no title to the defendants in the execution to be levied on. They are appointed executors, but there are no words of devise to invest them with any estate. *Rock River Paper Co. v. Fisk,* ante p. 212.

But other considerations appear. Were there no other

difficulties in the way it would remain a question whether a jury could be allowed to infer from the extrinsic fact offered to be proved the supposed testamentary intent and thereupon to fill the blank provision with a description of the land on section five. Passing this, however, it is certain that it was not competent to resort to parol evidence to supply the absent matter. The case was not one for interpretation or construction, because there was nothing on which the power could be exercised, and as there was no subject-matter to be construed or interpreted, there was no call for extrinsic facts to aid the office of interpretation or construction. The provision is a complete blank and in regard to the property the will is dumb.

There is nothing whatever on the face of the instrument to denote what real estate the testator had in view, nor anything to incline the intention one way rather than another in search of it. *Baylis and Church v. The Attorney General*, 2 Atk. 239; *Hunt v. Hort* 3 Brown Ch. 258, marg. 311; *Rothmahler v. Myers* 4 Des. 215 : 6 Am. Dec. 613; *McKechnie v. Vaughan* L. R. 15 Eq. Cas. 287 : 5 Eng. 854; *Doe v. Chichester* 4 Dow H. L. 65; *Hiscocks v. Hiscocks* 5 M. & W. 363; *Miller v. Travers* 8 Bing. 244; *Earl of Newburgh v. Countess Dowager of Newburgh* 5 Madd. 364 (Eng. ed.) 3, p. 223 (Am. ed.); *Clayton v. Lord Nugent* 13 M. & W. 200; *Castledon v. Turner* 3 Atk. 257; *Saunderson v. Piper* 5 Bing. N. C. 425; Adams' Eq. 388, 389, marg. 172; 2 Whart. Ev. § 1006; Wigram Extrin. Ev. prop. 6, pl. 121, p. 88 : prop. 7, pl. 181, p. 143; 1 Phil. Ev. (Cow. & Hill's ed.) 539, 540; 2 Cow. & Hill's Notes 1362–1408; 1 Roper on Leg. 144 etc.; Ram on Wills, ch. 3, pp. 32, 34; Jarman on Wills 353–363; 2 Parsons Cont. 563. See, also, *Tuxbury v. French* 41 Mich. 7; *Allen's executors v. Allen* 18 How. 385; *Fitzpatrick v. Fitzpatrick* 36 Iowa 674; *Griscom v. Evens* 11 Vroom 402; *Kurtz v. Hibner* 55 Ill. 514; *Hill v. Felton* 47 Ga. 455; *Sherwood v. Sherwood* 45 Wis. 357; *Burr v. Sim* 1 Whart. 252; *Craig v. Leslie* 3 Wheat. 563; *Fletcher v. Ashburner* and notes, 1 L. C. in Eq. 534.

Some of the authorities relate to the doctrine of equitable conversion and suggest whether in case the testator had inserted in the provision quoted a true description of the land in controversy any real interest would have so vested as to be liable to the execution, but it is not intended to indicate an opinion on the subject. According to the views which have been explained the court below seems to have reached the proper result and the judgment should therefore be affirmed with costs.

The case will be remanded for such other proceedings as may be proper.

The other Justices concurred.