JANE NELSON, APPELLANT, *v.* ISABELLA McDONALD AND OTHERS, RESPONDENTS.

*Two wills — each signed by mistake by the wrong party — equity cannot give relief — action to reform a will in such a case cannot be maintained under section 1866 of the Code of Civil Procedure — costs not awarded where the question is new.*

In an action brought to reform a will it appeared that a husband and wife intended to make wills, each in favor of the other, but that by mistake each signed and executed the will of the other.

*Held,* that the wills were null and void.

*Semble,* that such an action cannot be maintained, under such circumstances, under section 1866 of the Code of Civil Procedure, providing that the validity, construction or effect of a testamentary disposition of real property may be determined by action in like manner as the validity of a deed.

That the action contemplated by that section is one directed only to the determination of the validity of a disposition in an existing will, and not to the validity of the will itself.

The rule that where there is a valid will the courts in construing it, in order to carry out the testator's intentions, may, in certain cases, transpose, change or supply words, where there is a misdescription of property, or an error in the name of a beneficiary, has no application to a case in which a will is signed by the wrong party.

Where a question relating to the validity of a will is new, and the claim made by the plaintiff is manifestly in accordance with the intention of the 'testator, the court will not give costs against the plaintiff.

APPEAL by the plaintiff Jane Nelson from a judgment of the Supreme Court, entered in the office of the clerk of Onondaga county on the 17th day of March, 1891, with notice of an intention to bring up for review upon such appeal a judgment which dismissed the plaintiff's complaint, with costs, after a trial at the Onondaga Special Term.

In November, 1885, John and Jane Nelson, who were husband and wife, and who resided in the city of Syracuse, N. Y., employed one Cowie to draw their wills, each giving all his or her property to the other. The wills were drawn at the house of the parties, and read to them. They were then laid upon the table for them to sign, and each signed one of the wills. Each was then asked if the paper signed by him or her, was his or her last will and testament. Each said it was, and then each asked the subscribing witnesses to sign the paper executed by him or her as such, which they did. The wills were then placed in an envelope, which was sealed until after the death of John Nelson, which occurred in the following year. After his death the envelope containing the wills was opened, and it was then for the first time discovered that each had signed the will intended for the other. The wills were as follows:

"The last will and testament of Jane Nelson, of the city of Syracuse, county of Onondaga, and State of New York.

"I, Jane Nelson, being of sound mind and memory, aware of the uncertainty of life and the certainty of death, and desirous of making an equitable and proper disposition of my property at my decease, I do make, ordain, publish and declare this to be my last will and testament, in manner and form following, that is to say : After payment of all my lawful debts, I give, devise and bequeath all my estates, of every name and nature and wheresoever situated, both real and personal, to my beloved husband, John Nelson.

"Likewise, I make, constitute and appoint my said husband, John Nelson, to be my executor of this my last will and testament, hereby revoking all former wills by me made.

"In witness whereof, I have hereunto subscribed my name and affixed my seal, the eleventh day of November, in the year of our Lord, one thousand eight hundred and eighty-five.

"JOHN NELSON. [L. S.]

"The foregoing instrument was, at the date thereof, subscribed by Jane Nelson, the testator therein named, in the presence of us and each of us. She, at the time of making such subscription, acknowledged that she executed the same, and declared the said instrument so subscribed by her to be her last will and testament. Whereupon we, at her request, and in her presence, and in the presence of each other, do hereby subscribe our names as witnesses thereto.

"WILLIAM COWIE, *residing at Syracuse, N. Y.*
"JAMES HUNTER, *residing at Danforth, N. Y.*"

"The last will and testament of John Nelson, of the city of Syracuse, county of Onondaga, and State of New York:

"I, John Nelson, being of sound mind and memory, aware of the uncertainty of life and the certainty of death, and desirous of making an equitable and proper disposition of my property at my decease, I do make, ordain, publish and declare this to be my last will and testament, in manner and form following, that is to say: After payment of all my lawful debts, I give, devise and bequeath all my estate, of every name and nature and wheresoever situated, both real and personal, to my beloved wife, Jane Nelson. Likewise, I make, constitute and appoint my said wife, Jane Nelson, to be my executrix of this my last will and testament, hereby revoking all former wills by me made.

"In witness whereof I have hereunto subscribed my name and affixed my seal, the eleventh day of November, in the year of our Lord, one thousand eight hundred and eighty-five.

"JANE NELSON. [L. S.]

"The foregoing instrument was at the date thereof subscribed by John Nelson, the testator therein named, in the presence of us and

each of us. He, at the time of making such subscription, acknowledged that he executed the same, and declared the said instrument so subscribed by him to be his last will and testament. Whereupon we, at his request, and in our presence, and in the presence of each other, do here subscribe our names as witnesses thereto.

"WILLIAM COWIE, residing at Syracuse, N. Y.

"JAMES HUNTER, residing at Danforth, N. Y."

On the trial at Special Term the court held that neither of the papers set forth in the complaint was the last will and testament of John Nelson; that the plaintiff was not entitled to the relief demanded in the complaint, and the complaint was dismissed, with costs.

E. S. Wright, for the appellant.

Alexander & Green, for the respondents.

MARTIN, J. :

The manifest purpose of this action was to correct the mistake of the decedent in signing the wrong will. In other words, it was to reform the will signed by him, by changing the provisions therein so as to make them conform to the provisions contained in the will which he intended to sign.

The appellant contends that authority to maintain such an action is given by section 1866 of the Code of Civil Procedure, which provides: "The validity, construction or effect, under the laws of the State, of a testamentary disposition of real property, situated within the State, or of an interest in such property, which would descend to the heir of an intestate, may be determined, in an action brought for that purpose, in like manner as the validity of a deed, purporting to convey land may be determined." * * *

This statute was under consideration in the case of Anderson v. Anderson (112 N. Y., 104), and it was there held that a devisee of a legal estate, in possession of the property devised, could not maintain an action to establish a will against the heirs-at-law; that courts of equity in this State have no inherent jurisdiction to entertain such an action, and it is not given by the provisions of the Code (§§ 1866, 1867), authorizing the determination "in an action

brought for that purpose" of the questions as to "the validity, con-
struction or effect under the laws of this State of a testamentary
disposition of real property," and that these provisions refer, not to
the validity of the will making the disposition, but simply to the
validity of the disposition so made.  In discussing the effect of this
statute PECKHAM, J., said : "This language would seem to provide
for the case of a devise contained in an instrument where due and
proper execution is assumed, but which devise was to be adjudged
good or bad as it should be determined that it was in accord with or
against the law upon the subject of such devise."      Under the
doctrine of this case we regard it, at least, as very doubtful if this
action could be maintained.

If, however, we assume that the court had power to entertain
such an action, we then come to the question whether it was author-
ized to grant the relief sought.   The plaintiff contends that the
court had the power, and it was its duty, to have held that the will
signed by the decedent might be changed or reformed, and to have
reformed it so as to make it conform in all respects with the will
which he intended to, but through mistake failed to execute.   The
following authorities are cited as justifying this contention : *Mellish
v Mellish* (4 Ves., Jun., 45); *Phillipps* v. *Chamberlaine* (id., 51);
*Door* v. *Geary* (1 Ves., 255); *Wood* v. *White* (32 Me., 340); *Thomas
v. Stevens* (4 Johns. Ch., 607); *Connolly* v. *Pardon* (1 Paige, 291);
*Ex parte Hornby* (2 Bradf., 420); *Smith* v. *Smith* (1 Edward's
Ch., 189); *Pocock* v. *Redinger* (108 Ind., 573); *Milner* v. *Milner*
(1 Ves., 107); *Redfern* v. *Bryning* (L. R , 6 Ch. Div., 133); *Sweet-
ing* v. *Prideaux* (L. R., 2 Ch. Div., 413); *Barber* v. *Wood* (L. R.,
4 Ch. Div., 885); *Mellor* v. *Daintree* (L. R., 33 Ch. Div., 198);
*Cloak* v. *Hammond* (L. R., 34 Ch. Div., 255); *Salt* v. *Pym* (L. R.,
28 Ch. Div., 153); *In the Goods of Bushell* (L. R., 13 Prob.
Div., 7): *Morrell* v. *Morrell* (L. R., 7 Prob. Div., 68); *Pond* v.
*Bergh* (10 Paige, 140); *Lefevre* v. *Lefevre* (59 N. Y., 434);
*Hiscocks* v. *Hiscocks* (5 Mees. & W., 362); *St. Luke's Home* v.
*Association for Indigent Females* (52 N. Y., 191); *Trustees, etc.,*
v. *Colgrove* (4 Hun, 362); *Peters* v. *Porter* (60 How. Pr., 422);
*Patch* v. *White* (117 U. S., 210).

When the cases cited are examined it will be found that each
case involved the question of the proper construction to be given

to the particular will under consideration, and the most that can be claimed, as established by these cases, is that courts in construing wills may, to carry out the intent of the testator in certain cases, and under certain circumstances, transpose, supply or change the words of a will, and in case of a misdescription of property, or error in the name of a beneficiary, so construe the will as to carry out the manifest intent of the testator. The question in such a case is not what the testator intended, as distinct from what his words express, but simply what was intended by the words used when construed in the light of the circumstances surrounding the testator and his property. (Wigram on Wills, 53.)

We find nothing in the cases cited, to sustain the doctrine that a court of equity has jurisdiction to reform a will, or to correct the mistakes of the testator, except upon the construction of a valid will made and executed by him, as and for his last will and testament. Pomeroy, in his work on Equity Jurisprudence (at page 349, volume 2), says · "There is, of course, no power to reform wills." (Citing *Sherwood* v. *Sherwood*, 45 Wis., 357.) In Schouler on Wills (§ 220), it is said : "It is not the province of a court of equity to reform a will which the statute requires to be executed with certain formalities." (Citing *Fitzpatrick* v. *Fitzpatrick*, 36 Iowa, 674 ; *Yates* v. *Cole*, 1 Jones' Eq., 110 ; *Whitlock* v. *Wardlaw*, 7 Rich., 453.) In 3 Redfield on the Law of Wills (page 49 § 16), it is said : "It is not here attempted to reform the instrument (a will), so as to make it speak the real intentions of the testator. No court can do this." (Citing *Box* v. *Barrett*, L. R., 3 Eq., 244.) In that case Lord ROMILLY said : "Because the testator has made a mistake, you cannot afterwards remodel the will and make it that which you suppose he intended." In *Goode* v. *Goode* (22 Mo., 518), it was held that a court of equity has no jurisdiction to reform a will on the ground of the mistake of the draughtsman in drawing the same. RYLAND, J., in delivering the opinion in that case, says : "Here the parties (plaintiff)· seek to change a sentence or paragraph of the will of the testator, by adding the names of other legatees, so as to alter materially the bequests, indeed, seek to cut out one paragraph, in effect, and set up a new one. Admit this doctrine, and you may as well repeal the statute requiring wills to be in writing at once. Witnesses will then make wills and not testators."

In *Newburgh* v. *Newburgh* (5 Mad. Ch., 364), the Earl of New-burgh, having estates in the counties of Sussex, Gloucester and elsewhere, gave instructions to his solicitor to prepare a will, which, *inter alia*, was to give to his wife, the Countess of Newburgh, an estate for life in his estates in the counties of Sussex and Gloucester. The solicitor prepared a will accordingly, and the same was after-ward laid before an eminent conveyancer to settle. By some acci-dent the word " Gloucester " was left out by the conveyancer, and the person who made the fair copy changed the word " counties " into " county," and the will, as copied, omitted, therefore, altogether the estate for life to the Countess Dowager in the county of " Gloucester."

At the time Lord Newburgh executed the will the solicitor who attended the execution had with him the abstract of the will as originally prepared, and the will was not itself read, but this abstract, which gave a life estate to Lady Newburgh as well in " Gloucester " as in " Sussex," and the testator executed the will, believing it followed the abstract. A bill was filed by the Countess Dowager to rectify the mistake, and that the trusts of the will be executed with such correction.

The vice-chancellor refused to correct the mistake, holding that the court could not set up the intention of the testator which, by mistake, he had been prevented from carrying into execution, as if he had actually executed that intention in the forms prescribed by the Statute of Frauds. " To assume such a jurisdiction," says the vice-chancellor, " would, in effect, be to repeal the statute of frauds in all cases where a devisor failed to comply with the statute by mistake or accident, and to operate this repeal, by admitting parol evidence of the intention of the devisor, which it was the very object of the statute to avoid." ·

In this case the plaintiff and her husband each intended to make a will. They were alike, *mutatis mutandis*. By mistake, each signed the one prepared for the other. It is manifest that the decedent never intended to execute the will signed by him. None of the provisions contained in it expressed his intended disposition of his property. The will he intended to make was that signed by his wife. We are unable to perceive how it can be properly said that he executed his will. The evidence shows conclusively that he

did not. It was his wife's will that he executed. He intended to make a will, but by mistake that intent was frustrated. Suppose, instead of signing the will of his wife, he had, through a similar mistake, signed a deed or a blank piece of paper, is it possible that the court could when satisfied that he intended to make a will containing certain ascertained provisions, transform such deed or blank paper into the will he intended to make? If not, how does this case differ? In either case, the will he intended to make was not executed by him. If the court would be authorized to alter the paper he signed in this case, so as to make it the will that he intended, why might it not as well so change the deed as to make it his will, or write his will upon the blank paper signed by him?

To avoid confusion we should keep in mind the fact that the question here is not what construction should be placed upon a paper executed by the decedent, and intended as his last will and testament. The fundamental error in this case was not in the employment in his will of language that was ambiguous, uncertain or which did not correctly express the decedent's intention. It lies in the fact that the paper sought to be established as his will was never intended by him as such. His intention was to make another will which he had prepared but not executed. Therefore, the single question is whether the decedent left a will.

It was said by EARL, J., in *Rollwagen* v. *Rollwagen* (63 N. Y., 517): "A party who offers an instrument for probate as a will must show satisfactorily that it is the will of the alleged testator, and upon this question he has the burden of proof. If he fails to satisfy the court that the instrument speaks the language and contains the will of the testator, probate must be refused. The laws in reference to the distribution of the estates of persons dying intestate are founded upon principles of public policy and justice, and must regulate the transmission of property unless a person before death has in the mode prescribed by law himself provided how his property after his death shall be disposed of. As said by Judge DAVIES, in *Delafield* v *Parrish* (25 N. Y., 9, 35): 'It is not the duty of the court to strain after probate, nor in any case to grant it where grave doubts remain unremoved and great difficulties oppose themselves to so doing.' And this was substantially the language of Lord BROUGHAM in *Santon* v. *Williams* (2 Curt., 530)."

Independent of the authorities which will be presently considered, we think the decedent died intestate, and the court below was right in holding that the plaintiff was not entitled to the relief sought.

We have been cited to no case in this State, and have found none, where this precise question has been decided. We, however, find that it has been determined adversely to the appellant by the courts, both of England and Pennsylvania.

The first case where this question arose, to which our attention has been called, is *In the Goods of*———— (14 Jurist, 402), decided in 1850. In that case, two unmarried sisters, who lived together, were anxious each to make a will giving to the other, whichever of them might survive, the property they mutually possessed. Accordingly two wills were drawn up, the language and contents of which were precisely the same, except the name of the person in whose favor the bequests were made. This was done by a solicitor, their brother-in-law. Shortly after the wills were so drawn up they were signed at the same time by the two sisters in the presence of two witnesses, and, as was supposed at the time, were duly and properly executed; but, upon the death of one of these ladies, it was discovered, when looking at what was thought to be her will, that the signature of the living sister was affixed to that will instead of that of the intended testatrix, and that the signature of the deceased sister was affixed to the will of the living one. It was evident from this that a mistake had been made when the wills were signed, each having unintentionally signed the other's will. Application for the probate of the will of the deceased was made on the suggestion that a court of equity might put a construction on the contents of the one then before the court. Sir H. JENNER FUST, who delivered the opinion of the court in that case, said: "Two ladies live together, and they determine to make, what I may call, mutual wills. The wills are the same, *mutatis mutandis;* they were drawn up and executed — that is, if executed they are — at one and the same time, but, unfortunately, each signed the other's will. After the death of one of them the solicitor alters them so as to make the will of one appear as that of the other, and I need scarcely say he has erred in so doing. But what is to be done with this paper? It is not the will of the deceased, and it purports to give all her property to herself, a manifest absurdity. I must reject the motion."

The same doctrine was held in *Alter's Appeal* (67 Penn. St., 341), which was decided in 1871. In that case a husband and wife had wills prepared, giving their property to each other. By mistake each signed the other's will. After the husband's death an act of assembly was passed authorizing the court to hear testimony, and if the mistake was proved to reform the will. In that case it was held that the right of the husband's heirs had vested on his death, and the act was invalid ; that the husband had executed no will and there was nothing to reform.

' In delivering the opinion in that case, AGNEW, J., said : "This is a hard case, but it seems to be without a remedy. An aged couple, husband and wife, having no lineal descendants, and each owning property, determined to make their wills in favor of each other, so that the survivor should have all they possessed. Their wills were drawn precisely alike, *mutatis mutandis,* and laid down on a table for execution. Each signed a paper, which was duly witnessed by three subscribing witnesses, and the papers were inclosed in separate envelopes, indorsed and sealed up. After the death of George A. Alter the envelopes were opened, and it was found that each had by mistake signed the will of the other. To remedy this error the legislature, by an act, approved the 23d day of February, 1870, conferred authority upon the Register's Court of this county to take proof of the mistake, and proceed as a court of chancery to reform the will of George A. Alter and decree accordingly. Proceedings were had resulting in a decision of the Register's Court that there was no will, and that the act to reform it was invalid, the estate having passed to and vested in the collateral line of kindred. From this decree an appeal has been taken by Catherine Alter. On this statement the first inquiry is, was the paper signed by George A. Alter his will ? Was it capable of being reformed by the Register's Court ? The paper drawn up for his will was not a will in law, for it was not 'signed by him at the end thereof,' as the Wills Act requires. The paper he signed was not his will, for it was drawn up for the will of his wife and gave the property to himself. It was insensible and absurd. It is clear, therefore, that he had executed no will, and there was nothing to be reformed. There was a mistake, it is true, but that mistake was the same as if he had signed a blank sheet of paper. He had written his name, but not to his will.

He had never signed his will, and the signature, where it was, was the same as if he had not written it at all. He, therefore, died intestate, and his property descended as at law. The difficulty lies not in the want of power of a court of chancery to reform a mistake in an existing will, when full equity power to that end is conferred by the law, but in the want of power to give an existence to that which had none before. And the objection to the validity of the act conferring the authority to decree the will lies not in a want of power in the legislature to establish a will upon parol proof of the fact of making it, and of the intent to execute the proper paper, but in its want of power to divest estates already vested at law on the death of George A. Alter without a will. There being no will, it is evident that the effect of any subsequent legislation, call it by what name we may, is simply to divest estates."

In the *Goods of Hunt* (L. R., 3 Pro. and Div., 250), decided in 1875, the decedent, who resided with her sister, prepared two wills for their respective execution. The legacies in each and the disposition of the residue were almost identical, and in either case a life interest was given to the survivor in the bulk of her sister's property. The deceased, in mistake, executed the will prepared for her sister. The court held that the deceased did not know and approve of the contents of the document she executed, and refused probate of it. In that case Sir J. Hannen, said : " I should be glad to give effect to the intentions of the testatrix, by granting probate of this instrument, if I could, but I must not allow myself to be led away, from what appears to me to be very plain ground, by such a desire. No doubt there has been an unfortunate blunder. The lady signed as her will something which, in fact, was not her will. If I were to attempt to read it as her will, it would lead to a variety of absurdities. She leaves to her sister Sarah, that is to herself, a life interest in a portion of her property, and all the furniture, plate, etc., which she holds in part with herself. I am asked to treat this as a misdescription. If by accident a wrong name had been introduced, and it was clear what person was intended, the court would give effect to the instrument, provided the mistake could be corrected. But it would be contrary to truth in this case if I acted on such an assumption. If I were to put such a construction upon this will, I should be assuming, in

order to do substantial justice, what every one who hears me would know is contrary to the fact. And no court ought to base its judgment on something wholly artificial, and contrary to what every one must see is the real state of the circumstances. It is enough to say that there has been an unfortunate blunder. A paper has been signed as the lady's will, which, as it happens, if treated as her will, would, to a great extent, although not entirely, carry out her wishes. But in one respect it does not, for by it a legacy is bequeathed to one charity which she intended to leave to another. As regards this legacy, it is suggested that it might be treated as if the deceased did not know and approve of that part of the will, but she did not, in fact, know and approve of any part of the contents of the paper as her will, for it is quite clear that if she had known of the contents she would not have signed it. I regret the blunder, but I cannot repair it. I reject the motion, but I allow the executor's costs out of the estate."

The same doctrine is laid down in Schouler on Wills (§ 215), and in Redfield on Wills (page 49 § 16, and note).

I have quoted thus fully from these cases for the reason that the facts were almost identical with those of the case at bar, and hence the reasoning of the courts is clearly applicable here.

If we follow the doctrine of these authorities, it becomes manifest that the judgment in this case should be upheld, as the principle of the cases cited, if applied, is decisive of the question here involved. It is, however, said by the appellant that these authorities are not binding upon this court, and should be disregarded. It may be that this court would not be bound to follow the cases cited if satisfied that they were improperly decided, but as the reasoning of the court, and the result in those cases, commend themselves to our judgment, and are in harmony with the views we entertain upon this subject, they serve to confirm our opinion and lead us to hold accordingly.

Therefore, while we admit that the mistake in this case was unfortunate for the plaintiff, and one that a court might well desire to correct, still, as we think, both upon principle and authority, that the court could not correct it, it follows that we are required to hold that this action could not be maintained, and that the judgment appealed from should be affirmed.

As the costs in this action are in the discretion of the court, and as it is quite manifest that the intent of the decedent has been thwarted by the mistake in executing his will, we think costs should not have been awarded against the plaintiff. This conclusion is more fully justified when we consider the fact that the question involved in this case was new, and had not been decided by the courts of this State.

The judgment should be modified by striking out the costs awarded to the defendants, and as modified affirmed, without costs.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment modified by striking out the costs awarded to the defendants, and as modified affirmed, without costs of the appeal to either party.