No. 12,885.

51   871
h120  851

G. W. NOTT, SYNDIC, VS. STATE NATIONAL BANK.

SYLLABUS.

1. This was a suit for the amount realized on property pledged, brought on. the grounds that the pledgor had pledged his property without considera- tion, and within ninety days preceding his insolvency.  The act of pledge contained the declaration that the pledge was made to avoid the sale and sacrifice of securities already pledged and for further security.   The declaration was sustained by the facts, and there was, in consequence, sufficient consideration for the pledge.

2. A note payable on demand is a negotiable instrument which becomes past due after demand, and is not subject to equities prior to demand.

3. An amount given or a pledge made to obtain a creditor's forbearance not to· sell the property pledged by which the note payable on demand was secured,. was not a gratuity, as time for payment was granted (in effect), although· the note secured by pledge was made payable on demand.

4. Failure, growing out of sudden unforseen events, does not affect the· validity of a transaction made in good faith for a full consideration, entered into within three months preceding failure.


ON APPEAL from the Civil District Court for the Parish of Or- leans.  *Ellis, J.*

*Saunders & Miller* for Plaintiff, Appellant.

*J. McConnell* for Defendant, Appellee.

Argued and submitted March 21, 1899.
Opinion handed down April 3, 1899.

The opinion of the court was delivered by

BREAUX, J.   Plaintiff, syndic of the creditors of A. R. Brousseau, sued to set aside a pledge made by the insolvent within three months preceding his *cessio bonorum,* and to compel the pledgee to pay over to him the amount realized on the pledge.

Plaintiff's position is that the insolvent having pledged certain values to the State National Bank without any consideration passing at the date of the pledge, but to secure an indebtedness, prior to the·

date, due to that bank; that the pledge was null, and the amount realized on the values pledged is, in consequence, due to the syndic of the insolvent.

The defendant, on the other hand, joined issue with plaintiff, and insists, in defense, that the pledge is valid; that a considerable sum was due the bank on demand notes, and that the debt was secured by pledged securities. These securities had fallen in value, and the bank in its own interest had concluded that something must be done to place its claim on a proper footing, and, in consequence, had concluded to sell the values unless the debt was paid or additional security given.

Upon being informed of the desire of the bank in the premises, Mr. Brousseau, the debtor, found it to his interest to pledge additional securities of value to the bank, and thereby to prevail upon it not to sell the securities which he had pledged some time before.

The date of the respective pledges appears of record; also it appears of record that the proceeds realized from the sale of the values pledged to the bank amounted altogether to the sum of $3,515.82. It also appears of record that Mr. Brousseau made a cession of his property on the 30th day of September, 1896, within ninety days after the last pledge (the one assailed here) was made by him. The principal clause in the pledged notes, material to the issues here, reads, "and agree to give additional security to keep up the present margin whenever the market value of the above collateral should decline."

The cause for giving the consideration appears by the pledge of August 13th, as shown by the following:

"Now, therefore, in order to avoid the sale and probable sacrifice of the said securities already pledged as aforesaid and for further security to secure the payment of the three said pledged notes, so already held by said bank, the said A. Brousseau's Son hereby pledges and delivers to said State National Bank the merchandise described in the inventory thereof hereto attached."

We are notified that Mr. Brousseau carried on business in the name of A. Brousseau's Son. That accounts for the name as written in the pledge.

There is no question here about the name.

The pledged securities held by the defendant under the original pledge having greatly depreciated in value, the pledgee demanded of the pledgor, payment or additional security upon the pledge, and

notified the pledgor of its intention to sell the pledged property and realize on it, unless the notes were paid or additional security given.

After some delay Mr. Brousseau, the debtor, as set forth in the contract from which we have quoted, executed another pledge in favor of defendant and gave additional security.

The judge *a quo* sustained the last pledge made, that is, the pledge of August 13th, on the ground, as we are informed, that it was given to purchase an extension from the bank.

From the foregoing statement of the case, it is manifest that the bank, pledgee, was the holder of the values in the utmost good faith, and that the borrower himself, defendant, could not have the least cause to suspect the reverse in business which came upon him in less than ninety days after he had made the deposit of the additional values and obtained the delay which he had found greatly to his interest to get.

If contracts, entirely legal and binding, at the date they are made, can thus be rendered null by unforseen subsequent failure, under the circumstances as disclosed by the record in the case before us, then many transactions in commerce, considered safe and legal, would become very unsafe. Many securities in the community would have but very little value; but this, we take it, was not the intention of the legislature in adopting the statute we are called upon to interpret in this case. It orders that a debtor, who shall within three months preceding his failure, engage or mortgage any of his goods and effects, in order to give an unjust preference to a creditor, shall be prohibited from taking the benefit of the insolvent laws, and the contract itself shall be declared null, unless the pledgee proves that the property was pledged to him in good faith and for ample consideration. Section 1808, Revised Statutes.

The unjust preference in this case does not appear, but, on the contrary, it does appear that the property was pledged to the bank in good faith and for ample consideration. Plaintiff himself has not only not denied the *bona fides* of the pledge, but has been forced by the facts of the case expressly to admit that there is no question or doubt as to the entire good faith of both parties to the contract and pledge last made. But the insistence of plaintiff is that as to the creditors of one who is declared insolvent within the three months prior to the declared insolvency, that is, as to third persons, there was no consideration for the pledge, inasmuch as it does not appear that further

time was granted by the pledgee to the pledgor on the notes held by the former, secured by the pledge before mentioned. It is true that the notes held by the bank were made payable on demand, and that the creditor did not obtain in written words, at the time of the additional pledge of values, a delay. From this, plaintiff argues, that there was no consideration, and that the bank obtained security without giving anything in return.

The contract sets forth a specific consideration, and the evidence also shows a consideration. It was, in point of fact, satisfactorily shown, and was ample, as we think.

The mere indeterminate period as to time of delay does not invalidate a contract if the agreement implies a reasonable time within which payment would be expected.

Story in his work on "Contracts," Section 43, says, that "the law will presume that the promise to forbear for a reasonable time is sufficient consideration."

We do not understand that there was the least advantage taken in this case of the distress or embarrassment of a debtor. The transaction has every appearance of fair dealing. Its purpose was to obtain a delay, and although the delay was not expressed, it was, from the nature of the transaction, understood. It was not essential to the validity of the contract to express on the face of the papers the delay granted to the pledgor. "The purpose was evidently a reasonable delay to the debtor, the purpose of the order was to save the values pledged, and the delays obtained to that end were in themselves legitimate and full consideration." Story on Contracts, Sec. 429. Evidently, the purpose of the last pledge was, as just mentioned, and delay was granted as agreed upon.

Now with reference to notes made payable on demand as those here on the grounds urged, plaintiff, in our judgment, is not entitled to the relief asked. The fact that the notes secured by pledges were made payable on demand, could not have the effect of impairing their obligation or their negotiability. They had a binding effect which has been repeatedly recognized by the courts. A demand note, as relates to presentment for payment, differs from a bill or check; while the latter is intended to be paid immediately, the former payable on demand, is *often intended as a security for an investment and as evidence of the investment made.* Such notes become past due after de-

mand, and prior to demand are considered as negotiable notes. Woods, Byles, Section 333.

These notes are transferable before maturity, that is, before presentment for payment, and, when so transferred, are as free from equities as any other notes made payable on demand expressed on their face. The pledges by which they are secured, follow them as in case of other notes payable on demand, fixed as expressed in the note itself.

As a matter of fact, the extension of time on the original notes and pledges was granted by the creditor as a consideration for obtaining an additional pledge. The securities having declined in value, a second pledge given to supply the decline was equally as valid as the first.

The date of the pledge, made less than ninety days before the insolvency of the pledgor, valid at the time it was made, did not become invalid by the unexpected reverses which impoverished the pledgor and compelled him to resort to proceedings of insolvency.

Therefore, the judgment appealed from is affirmed.

MONROE, J., takes no part, as he was not a member of the court when this case was heard.