MARIS v. ADAMS.    (No. 567.)

(Court of Civil Appeals of Texas.    Amarillo. March 14, 1914.    On Motion for Rehearing, April 11, 1914.    Rehearing Denied April 25, 1914.)

1. WILLS (§ 114*)—REQUISITES AND VALIDITY —EXECUTION—ATTESTATION.

Papers alleged to constitute a testamentary disposition, which were not attested as required

by Rev. St. 1911, art. 7857, providing that every will shall, except when otherwise provided, be attested and subscribed in the testator's presence by two or more credible witnesses over 14 years of age, were insufficient as a formal will under that article.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 277–279; Dec. Dig. § 114.*]

2. WILLS (§ 132*)—REQUISITES AND VALIDITY —HOLOGRAPHIC WILLS—HANDWRITING OF TESTATOR.

An envelope on which was written the word "Notes" and B.'s name, a paper inclosed asking B. and A. to accept this, and a note also inclosed, written on a printed form, payable to A. and B., and both signed by V., in whose handwriting all was written, except the printed portion of the note, did not constitute a valid holographic will, because not "wholly written by the testator," as required by Rev. St. 1911, art. 7858.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 341; Dec. Dig. § 132.*]

3. WILLS (§ 132*)—REQUISITES AND VALIDITY —HOLOGRAPHIC WILLS—HANDWRITING OF TESTATOR.

Where a printed form is used in writing a will, so that it consists partly of the printing and partly of the clauses written by the testator, no part of it can be admitted to probate as his holographic will under Rev. St. 1911, art. 7858, dispensing with the necessity of attestation "where the will is wholly written by the testator."

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 341; Dec. Dig. § 132.*]

4. WILLS (§ 134*)—CONSTRUCTION—CONSTRUING WRITINGS TOGETHER.

If parol evidence was admissible to show that a writing asking B. and A. to accept this, and a note to them, both signed by V., were found together in a sealed envelope, and if the note was properly incorporated into the writing by reference, then all three were to be considered and construed together in determining whether they could be probated as a will.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 345; Dec. Dig. § 134.*]

5. GIFTS (§ 32*)—INTER VIVOS—DELIVERY— NECESSITY.

Where V. executed a note to A. and B., which, with a paper asking them to accept it, was placed in an envelope and sealed, and the same was found in V.'s house after his death, there was no gift inter vivos, because of the absence of a delivery by V. during his lifetime.

[Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 63, 64; Dec. Dig. § 32.*]

6. WILLS (§ 87*)—REQUISITES AND VALIDITY —NATURE AND ESSENTIALS—TESTAMENTARY INTENT.

A paper asking B. and A. to accept this, and a note payable to them "15 after date," both signed by V., and inclosed in a sealed envelope, on which was written "Notes" and B.'s name, did not show an intent to make a testamentary disposition, the criterion of which is whether by intendment it takes effect at the maker's death, vesting no earlier interest in the beneficiary.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 206, 207; Dec. Dig. § 87.*]

7. WILLS (§ 464*)—CONSTRUCTION—LANGUAGE OF INSTRUMENT—PARTICULAR WORDS.

In construing an alleged will consisting of a writing asking B. and A. to "please except this," and a note to them, both signed by V., and inclosed in a sealed envelope, the word "except" will be treated as meaning "accept"; a liberal

allowance being made for V.'s awkwardness in the use of words.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 983; Dec. Dig. § 464.*]

8. BILLS AND NOTES (§ 348*)—BONA FIDE PURCHASERS—TIME OF TAKING.

A note payable to the order of B. and A., "Fifteen after date," could not be revoked by the maker on the ground that it was a testamentary gift, if delivered and transferred within a reasonable time to a bona fide holder before demand.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 870–877½; Dec. Dig. § 348.*]

9. EVIDENCE (§ 450*)—PAROL EVIDENCE—AIDING CONSTRUCTION—AMBIGUITY.

There was no ambiguity about a writing asking B. and A. to accept this, and a note to them, both signed by V., and inclosed in a sealed envelope, on which was written "Notes" and B.'s name, the intention evidenced being to make a gift rather than a will, and it was improper to admit parol evidence to vary, contradict, or add to their expressed terms.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2066–2082, 2084; Dec. Dig. § 450.*]

10. WILLS (§ 488*) — CONSTRUCTION — EVIDENCE TO AID CONSTRUCTION—AMBIGUITY.

If an alleged will consisting of a writing asking B. and A. to accept "this," and a note to them, both signed by V., and inclosed in a sealed envelope, indorsed "Notes," was ambiguous on account of the use of the words "Notes" and "this," it was a patent ambiguity, which could not be explained by parol evidence.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1024, 1025, 1033–1036; Dec. Dig. § 488.*]

11. WILLS (§ 293*)—REQUISITES AND VALIDITY—NATURE AND ESSENTIALS—EVIDENCE AS TO CHARACTER OF INSTRUMENT.

Whenever a person deceased has executed a paper which does not upon its face clearly evidence a testamentary character, the courts cannot transform it into a will by the aid of parol evidence, in violation of Rev. St. 1911, art. 7857, declaring that every will, except as otherwise provided, shall be in writing.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 666–672, 675–678; Dec. Dig. § 293.*]

12. WILLS (§ 293*) — CONSTRUCTION — EVIDENCE TO AID CONSTRUCTION.

Under Rev. St. 1911, art. 7857, providing that all wills, except as otherwise provided, shall be in writing, parol evidence as to the testator's intent is not admissible, except to explain a latent ambiguity, which can never arise as to the question of testamentary intent.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 666–672, 675–678; Dec. Dig. § 293.*]

13. WILLS (§ 477*)—REQUISITES AND VALIDITY—FORM AND CONTENTS — REFERENCE TO OTHER WRITINGS.

A note which was found with a letter asking the payees to accept "this," in a sealed envelope, indorsed "Notes," was not incorporated into the letter by reference, so as to constitute a will, as the reference was too indefinite and ambiguous, and required parol evidence to explain it.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 998; Dec. Dig. § 477.*]

14. WILLS (§ 477*)—REQUISITES AND VALIDITY — FORM AND CONTENTS — REFERENCE TO OTHER WRITINGS.

In order to incorporate a separate instrument into a will by reference, it must be in existence at the time of the execution of the will,

which fact must appear upon its face, and the instrument intended must be described in clear and definite terms.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 988; Dec. Dig. § 477.*]

15. WILLS (§ 297*)—PROBATE—EVIDENCE—ADMISSIBILITY.

Declarations of the testator made before or after the date of the will, and relating to its execution, but not a part of the res gestæ, are not admissible.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 690–696; Dec. Dig. § 297.*]

16. WILLS (§ 297*)—PROBATE—EVIDENCE—ADMISSIBILITY.

Declarations of a testator at the time of executing a will that he "already had Adams and Henry fixed" were not admissible to establish the execution of a prior will, nor to identify a note claimed to have been found with a letter asking the payees to accept "this," in a sealed envelope, indorsed "Notes," as one of the notes referred to on the envelope.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 690–696; Dec. Dig. § 297.*]

17. WILLS (§ 293*) — CONSTRUCTION — EVIDENCE TO AID CONSTRUCTION.

The rule that parol evidence is admissible to show the situation of the testator or the surrounding circumstances at the time of executing the will applies only after the court has decided that the instrument or instruments under consideration were executed with a testamentary intent, and therefore constitute a will, since to permit such evidence to determine the nature and character of the instrument would open the door for fraud, encourage perjury, and allow an instrument clearly not a will upon its face to be converted into a will by the evidence of outside of interested parties.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 666–672, 675–678; Dec. Dig. § 293.*]

On Motion for Rehearing.

18. APPEAL AND ERROR (§ 1091*)—REVIEW—PRESUMPTIONS—FACTS NOT SHOWN BY RECORD.

Where a case was appealed from the county court to the district court, and on appeal from the district court the proceedings in the county court were not made part of the record, every presumption must be indulged in favor of the correctness of the judgment of the district court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4302–4311, 4331; Dec. Dig. § 1091.*]

19. WILLS (§ 272*)—PROBATE—PLEADINGS—IN GENERAL.

Where the replication of the proponent of certain papers as a will asked that a subsequent will be admitted to probate in connection with proponent's alleged will, the pleadings were sufficient to authorize the admission of the subsequent will to probate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 627; Dec. Dig. § 272.*]

20. APPEAL AND ERROR (§ 719*) — ASSIGNMENTS OF ERROR — NECESSITY—FUNDAMENTAL ERROR.

A want of evidence or an insufficiency of evidence to sustain the judgment is not such a fundamental error as to require consideration without a proper assignment of error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2968–2982, 3490; Dec. Dig. § 719.*]

21. WILLS (§ 179*)—REQUISITES AND VALIDITY—REVOCATION—SUBSEQUENT WILL.

If a will leaving a certain sum to G. and the rest to testator's heirs was executed after the execution of an alleged will, consisting of a

letter and a note to B. and A., both signed by testator, it had the effect of revoking such alleged will, if any there was, though it was claimed that such was not testator's intention. [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 456, 457; Dec. Dig. § 179.*]

Hendricks, J., dissenting in part.

Appeal from District Court, Moore County; D. B. Hill, Judge.

Application by F. Y. Adams for the probate of certain papers as the will of E. Vanlaw, deceased, opposed by C. H. Maris. From a judgment admitting such papers to probate, the contestant appeals. Reversed and rendered in part, and affirmed in part.

Madden, Trulove & Kimbrough, of Amarillo, and Moore, Harrington & Powell, of Dalhart, for appellant. Tatum & Tatum, of Dalhart, and W. Boyce, of Amarillo, for appellee.

HALL, J. On August 10, 1912, appellee, Adams, filed in the county court of Moore county his application to probate as the last will and testament of E. Vanlaw three papers as follows: (1) An envelope on which was written horizontally the words "Henry Boyce," and across the end the word "Notes." (2) A sheet of paper apparently torn from a small writing tablet, and on which was written the words: "Henry, please except this you and F. Y. Adams for the kindness shown me. E. Vanlaw." (3) A promissory note prepared on a printed blank, a copy of which (the script part being in italics) is as follows: "*$14000*, Dumas Texas, *July the 3, 1911, Fifteen after date* after date, for value received, *I*, we or either of us promise to pay to the order of F. Y. Adams & Henry Boyce *Fourteen Thousand Dollars* Dollars, with ———— percent per annum thereon from ———— until paid, interest payable annually, and if not paid to bear the same rate of interest and if default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection then an additional amount of ten percent on the principal and interest of this note shall be added to the same as collection fees. The makers and endorsers of this note hereby severally waive demand of payment, notice of nonpayment, protest and notice of protest and hereby consent that time of payment may be extended from time to time without notice hereof. *E. Vanlaw*." Notice of application having been given, C. H. Maris, a half-brother of the deceased, appeared and contested. Upon a hearing in the county court these papers were, on May 21, 1913, admitted to probate and ordered recorded as the proven will of said deceased. Maris appealed from this judgment to the district court. Where, upon another trial before a jury, judgment was entered upon the findings of the jury admitting such instruments to probate, and establishing a subsequent instru-

ment dated July 15, 1911, known as the "Geary will," and which is as follows: "Know all men by these presents that E. Vanlaw has wild John Geary Seven Thousand Dollars at My Death the Rest of my property to my bodley airs, written by F. Y. Adams." J. H. Boyce was appointed administrator, etc.

In appellee's brief is set out in part some of the evidence, which we reproduce in substance: E. Vanlaw, the deceased, was at the time of his death about 72 years of age. It appears that he left home when a boy; his nearest relatives being his half-brothers and sisters, with whom he seems to have had little acquaintance. Prior to his settlement in Moore county he seems to have traveled a great deal, and is described by the witnesses as being somewhat peculiar and eccentric. He is said to have been a miser, and frequently did not have enough to eat or sufficient clothes to protect him. In 1905 he abandoned his occupation as a veterinary surgeon and purchased five sections of land in Moore county, stocked it with cattle, and lived there until he was carried to Dalhart for medical treatment about a month before he died. He lived alone most of the time, but during a part of the time had a hired man on his place. For a number of years he had relied largely on the advice of Henry Boyce in the conduct of his business, consulting him frequently, and often referring to him in his conversations. He seems to have had very little to do with his relatives. John Geary attended to the handling and delivery of his cattle, and he usually called on F. Y. Adams for assistance and advice in the details of his daily business affairs. He had been suffering from an incurable malady for many years, and was a regular drinker; his death being ascribed to alcoholic poisoning of the brain. During the spring of 1911 he grew weaker, and his health was apparently failing. One of the witnesses testified that during this time he heard the testator say he did not think he would live very long; that it might have been a good thing to have given his property to orphan children, but "Henry, I expect, deserves it more than anybody else." On July 5, 1911 (if the date of the writing is correct), the deceased sent Hammitt, his hired man, for F. Y. Adams, and had him write what is referred to as the Geary will, which is witnessed by Hammitt and Adams, whereby he bequeathed to John Geary $7,000, stating at this time, so Hammitt and Adams testify, that he already had Adams and Henry "fixed." He died on October 21, 1911. From September 20th to October 21st he was not rational except at intervals. One J. H. Lamb went to the Vanlaw house some time during the month of August, 1912, and in the upper room of the building found in a small box the sealed envelope on which was written "Henry

Boyce" and the word "Notes," and advised Henry Boyce of this fact. Boyce visited the place and testified that he found the envelope offered in evidence in the box as described by Lamb; that he opened it and exhibited the contents to the parties who were with him at the time, such contents being the note and other writing offered in evidence for probate. The jury found that the writing on the envelope and that portion inclosed, except the printed portions of the note, were all written by E. Vanlaw; that thereby Vanlaw intended to make a gift to Henry Boyce and F. Y. Adams, effective upon his death; that he was at such time capable of knowing and understanding the nature of the act, and that the note was in existence at the time the words, "Henry, please except this you and F. Y. Adams for the kindness shown me," were written; that the note was what was referred to by the word "this" used in said writing; and that it was not the intention of Vanlaw to revoke this gift by the execution of the Geary will.

[1-3] The three papers, viz., the letter, the envelope, and the $14,000 note, were not attested, as required by R. S. art. 7857, and clearly cannot be considered a formally written will when measured by that article, even though the animus testandi was apparent, nor can they be probated as a holographic will, because the note, being partly printed, is not within the requirement of R. S. art. 7858, that it shall be "wholly written by the testator." A will cannot be holographic if any part of it is not in the handwriting of the testator. Philbricks' Heirs v. Spangler, 15 La. Ann. 46; Estate of Knox, 131 Pa. 220, 18 Atl. 1021, 6 L. R. A. 353, 17 Am. St. Rep. 798. Hence, if a printed form has been used, so that the paper consists partly of such printing and partly of clauses written by the testator, no part of it can be admitted to probate as his holographic will. Williams' Heirs v. Hardy, 15 La. Ann. 286; In re Rands' Estate, 61 Cal. 468, 44 Am. Rep. 555. In the case last cited the testator had procured a blank form for a will, in which the formal parts, such as directions with reference to his burial, payment of funeral expenses, and expenses of last sickness, etc., were printed. The opinion of the court quotes the California Civil Code as follows: "An holographic will is one that is entirely written, dated, and signed by the hand of the testator himself. It is subject to no other form and may be made in or out of this state, and need not be witnessed" (Civ. Code, § 1277)—and proceeds: "The paper before us was not entirely written by the hand of the deceased. Portions of it were printed. The Legislature has seen fit to prescribe forms requisite to an holographic will, and these forms are made necessary to be observed. It was strenuously urged before us that the portions of the paper which were written by the deceased should be admitted to pro-

bate, omitting the printed portions. We are not at liberty to so hold. We should thereby in effect change the statute and make it read that such portions of an instrument as are in the handwriting of the deceased constitute an holographic will. The instrument in its entirety is before us. It was not entirely written by the hand of the deceased." It has been held in several instances that a will written upon a letter head in which part of the date line was printed and the remainder written was void as a holographic will. This holding is based upon the statute that a holographic will must be dated by the testator. In re Billings' Estate, 64 Cal. 427, 1 Pac. 701; Succession of Robertson, 49 La. Ann. 868, 21 South. 586, 62 Am. St. Rep. 672. The requirement as to dating is not found in the statutes of this state; but the authorities are numerous and seem to be without discord that a holographic will not entirely written by the testator cannot be probated. Estate of Martin, 58 Cal. 532; Gregory v. Oates, 92 Ky. 532, 18 S. W. 231; In re Plumel, 151 Cal. 77, 90 Pac. 192, 121 Am. St. Rep. 100.

[4, 5] If we are to consider the parol testimony admitted by the court showing that the letter and $14,000 note were found by Lamb and Boyce in the sealed envelope, and if we hold that the note was by proper reference incorporated in the letter (which question we will discuss later), then, according to appellant's contention, these three papers must be considered and construed together, and we think this would be correct. Grigsby's Legatees v. Willis' Estate, 25 Tex. Civ. App. 1, 59 S. W. 576; Allday v. Cage, 148 S. W. 838. If taken collectively, they do not constitute a holographic will. In re Noyes, 40 Mont. 190, 105 Pac. 1017, 26 L. R. A. (N. S.) 1145, 20 Ann. Cas. 366; R. S. 1911, art. 7858; 40 Cyc. 996 and 1129. According to the record, these papers were never delivered to Boyce and Adams by Vanlaw prior to his death, and for this reason there was no gift inter vivos. Chevallier v. Wilson, 1 Tex. 161.

[6-8] Taking the instruments, either separately or as a whole, do they show a testamentary intent? "The great criterion of a testamentary disposition is that by intendment it takes effect at the death of the maker, vesting no earlier interest in the beneficiary." Grigsby's Legatees v. Willis' Estate, supra. We make a liberal allowance for the awkwardness of testator in the use of words and construe "except" used in the letter as meaning "accept." Then the letter would be: "Henry, please accept this, you & F. Y. Adams, for the kindness shown me. E. Vanlaw." There is clearly not a word of testamentary import, such as "I give," "I bequeath," "I will," "I desire," and the like in it; but, on the contrary, the words "please except" might imply a possible refusal on the part of donees and rather indicate the tender of a gift inter vivos. Neither is the find-

ing of the jury sustained by the face of the note. It is a plain promissory note, in its legal effect, payable on demand; but the words "Fifteen after," whether it be taken to mean fifteen days, months, or any other period of time, cannot be reconciled with the contention that it was intended to be made payable after the death of the maker. There is no stipulation that it is to be paid by his executor or out of his estate after death, and in short it contains nothing to distinguish it in character from the flood of negotiable instruments daily filling the channels of commerce. If it had been delivered, it would not have been revocable at the will of Vanlaw, because it was payable to the order of Boyce and Adams and could have passed within a reasonable time into the hands of a bona fide holder before demand. Paine v. C. V. R. R. Co., 118 U. S. 152, 6 Sup. Ct. 1019, 30 L. Ed. 195; Wood's Byles, Bills, § 333; Nott v. State National Bank, 51 La. Ann. 871, 25 South. 475. "Courts have not infrequently accorded great weight to the fact that the maker retained possession of the paper, and have permitted that fact to give to the instrument the revocable character which the language implied failed to supply (Schouler, Wills, § 268, p. 276); but it is difficult to determine from the authorities just what weight should be given to this fact, or whether it is proper to allow it to control in any cause" (Grigsby's Legatees v. Willis' Estate, supra).

Aside from the fact that Vanlaw failed to deliver the $14,000 note to Boyce and Adams before his death, we find nothing in the record tending to show an ambulatory character—an inspection of the note and letter themselves does not disclose such nature. Even if we are to consider the papers in the light of the surrounding circumstances, they tend to show an intention to make a gift inter vivos rather than a posthumous disposition of any property. The finding of the jury as to the testamentary intent must be sustained, if at all, by parol evidence. Upon the admissibility of parol evidence for this purpose there is an irreconcilable conflict in the decisions of other states. Nor is there perfect harmony in the decisions of our own state upon the point. It is said, in Ferguson v. Ferguson, 27 Tex. 339: "In discussing the form and manner of making a will, the correct doctrine by which the courts are governed in passing upon instruments of a doubtful or uncertain character is thus aptly and forcibly expressed in Williams on Executors: 'The true principle to be deduced from the authorities appears to be that, if there is proof, either in the paper itself, or from clear evidence dehors, first, that it was the intention of the writer of the paper to convey the benefits by the instrument which would be conveyed by it if considered as a will, secondly, if death was the event that was to give effect to it, then, whatever may be its form, it may be admitted to probate as testamentary; and there seems to be this distinction in the consideration of papers which are in their terms dispositive and those which are of an equivocal character, that the first will be entitled to probate, unless they are proved not to have been written animo testandi, whilst in the latter the animus must be proved by the party claiming under them.' 1 Williams on Ex'rs, 87. There is always a presumption, it is said, against an imperfect testamentary paper, and when it is doubtful in which way such paper should operate, it is for the jury to decide on the facts of execution and delivery, and to draw the just inferences from the declarations of the maker. * * * It cannot be insisted for a moment that the paper under discussion in this case is a perfect testamentary instrument. It is evidently very inartificially drawn, whether intended as a deed or a will; but the maker himself calls it a deed, and its phraseology and manner of execution is much more analogous to instruments of that character than to wills. It is executed under seal, which is unnecessary in a will. Subsequent to its execution it was duly acknowledged by the maker as his deed before the clerk of the county court, and placed upon record as such, which was unnecessary and very unusual with wills, but appropriate, if not essential, if it was intended as a deed. The operative word 'give,' which is the only one used in the instrument, is appropriate to either a deed or a will; but, standing alone, it would seem to indicate a direct and immediate gift rather than a testamentary bequest. The habendum clause, which is twice used, would be altogether out of place in a will, and the reservation of a life estate to the maker is wholly inconsistent with the idea that the instrument was intended as a will. That the beneficiaries should not take or hold possession of the property until after the death of the maker is as consistent with the supposition that he intended to make a deed of gift in fee after the termination of a life estate reserved to himself as that the instrument was intended to be of a testamentary character. On the other hand, those clauses of the instrument embracing property to be subsequently acquired by the maker, while they might be embraced in a will, are inoperative and void in a deed, and may be fairly referred to as tending in some degree to repel the conclusion to be drawn from other parts of it that it was not executed or intended to operate as a testamentary instrument. The legitimate conclusion, therefore, to be deduced from the face of the paper leaves it a matter of doubt whether it was intended to operate as a deed or will, and in such cases the fact of its delivery and the intention and purpose of its execution should be submitted as questions of fact to the jury, to be guided in their determination of them, however, by the construction given to the terms of the instrument by the court, together with such extrinsic testimony as may be furnished by the

parties to aid in their elucidation." In that case the instrument contained this recital: "This deed, however, is not to deprive myself of the use of any or all of said property so long as I live, and after my death they [the grantor's son and daughter] will take full possession of the whole," etc.

In Rogers v. Kennard, 54 Tex. 30, the court had under consideration a writing from the testatrix, addressed to her daughter, purporting to be made in consideration of "many kind and valuable services," and closing with this language: "But it is understood, further, that the lands, etc., given and conveyed to my daughter Polly by this deed, and which is an equal share with the children herein mentioned, are given and conveyed subject to the reservations and conditions: The said lands are hers for life, subject to none of her present debts or liabilities, or the use, debts, or liabilities of no future or past husband, and at her death to be divided between the six children specified, in this will, share and share alike, and to be given and divided between no other person or persons." Citing the Ferguson Case, supra, Bonner, A. J., said: "Was the purported deed from Tabitha Melton to Polly Rogers and others, under which the plaintiffs claim, a deed or a will? In a proper case, where there is such ambiguity connected with an instrument as to forbid that the court, as a question of law, should construe and declare its legal effect to be either a deed or a will, this issue should be submitted to the jury as a question of fact. The instrument under consideration was recited in its commencement to have been an indenture, further on it is called a deed, and near the end it is styled a will. In its general form it was a deed." The only remaining case which we have been able to find bearing upon the question under discussion, and tending to sustain the judgment, is Hannig v. Hannig, 24 S. W. 695, in which the Court of Civil Appeals of the Third District used this language: "The question now to be considered is as to the effect to be given to these instruments, whether as a deed or a will. Appellant insists that there was no ambiguity in the instruments, but that they are clearly deeds, and the court should not have allowed the jury to construe them. We do not think the court erred as stated. The fact that the conveyance was not to take effect until after the death of the donor, together with extrinsic testimony, made it doubtful whether he intended it to operate as a deed or a will. In such case it was proper to submit the question to the jury. * * * To show that an instrument is intended to operate as a will, much stress is laid upon the fact that it is not intended to take effect until after the death of the donor. In Carlton v. Cameron, 54 Tex. 77 [38 Am. Rep. 620], it is said that, 'although the instrument had the form of a deed, and was placed upon record, it was nevertheless testamentary in character, and

inoperative as a deed, if the intention of the maker appears to have been that it should take effect only on his death.' The court concluded that, as the judgment of the lower court was upon the ground that such was the intention, it was correct, and should stand."

These cases take no note of the statute of wills, and the decisions announced were evidently without any reference to the statute requiring wills to be in writing, and do not touch that question or discuss it from the standpoint in which we find it discussed by Stayton, Chief Justice, in Heidenheimer v. Bauman, 84 Tex. 174, 19 S. W. 382, 31 Am. St. Rep. 29. It has lately been held by the Court of Civil Appeals in Johnson v. Avery, 148 S. W. 1156, that only in case of ambiguity can parol evidence be introduced upon the question of testamentary intent. To the same effect are the cases: Naugher v. Patterson, 9 Tex. Civ. App. 168, 28 S. W. 582; Stanley v. Samples, 2 Posey Unrep. Cas. 126. As said in Noble v. Fickes, 230 Ill. 604, 82 N. E. 953, 13 L. R. A. (N. S.) 1207, 12 Ann. Cas. 282: "It is a well-established rule that parol evidence is inadmissible to add to, alter, vary, or contradict the terms of a valid written contract or other instrument of a solemn and conclusive nature. * * * The rules for the admission and exclusion of parol evidence in regard to wills are essentially the same which prevail in regard to contracts generally. Such evidence is not receivable to show the intention of the testator except to enable the court, where the question arises, to give the language such an interpretation as, from the circumstances in which he was placed, it is reasonable to presume the testator intended it should receive, or, as it is sometimes expressed, to put the court in the testator's place. 1 Redf. Wills (4th Ed.) p. 496. Under the lax rules that formerly prevailed in England, especially in the Ecclesiastical Court, where wills of personal property were probated, cases may be found where resort to extrinsic parol evidence was allowed for the purpose of establishing testamentary intent, where there was no ambiguity on the face of the instrument, and the instrument afforded no evidence that it was only to take effect upon the death of the maker; and there are some decisions in this country to be found in the earlier reports where instruments in the form of a deed of gift had been admitted to probate out of regard to the giver's testamentary purpose, which was disclosed by extrinsic parol evidence. Some of these cases may be found collected in the note above cited from Schouler on Wills. This question is very ably discussed by Chancellor Kent in Mann v. Mann, 1 Johns. Ch. [N. Y.] 231, where the earlier cases are carefully reviewed, and the rule of law deduced, as follows: 'It is a well-settled rule that seems not to stand in need of much proof or illustration, for it runs through all the books

from Cheyneys Case, 5 Coke, 68, down to this day, that parol evidence cannot be admitted to supply or contradict, enlarge or vary, words of a will in order to explain the intention of the testator, except in two specific cases: (1) Where there is a latent ambiguity arising dehors the will as to the person or subject meant to be described; and (2) to rebut a resulting trust. All of the cases profess to go upon one or the other of these grounds.' See 1 Redf. Wills (4th Ed.) p. 561. In Clay v. Layton, 134 Mich. 317, 96 N. W. 458, the question arose as to the admissibility of parol evidence to show the testamentary intention in the making of·a deed which was unambiguous on its face. That court, in a well-considered and exhaustive opinion, held that such evidence was not admissible, and expressed its conclusion as follows: 'We have had difficulty in finding a case in which the exact point before us is raised; but it seems manifest that the same rule that for-bids the contradiction of an established will should forbid the contradiction of the same instrument as a means of establishing it as a will when its terms plainly show it to be a deed conveying a present interest. It is only when the writing is of doubtful import that interpretation by the aid of extrinsic evidence becomes necessary, and in such case interpretation—not contradiction—is permissible. We are reluctantly driven to the conclusion that we cannot give effect to the deceased's manifest desire, a desire so well established and so apparently well grounded and just as to merit our approbation; but we fear that the trite saying that "hard cases make bad law" would be applicable should we sustain the complainant's contention. To do so would be to override established rules and principles essential to the protection of the rights of heirs.' There are very strong reasons why this rule should be·applied in this state. Our statute requires wills to be in writing. If an ambiguous deed which, on its face, purports to convey a present interest can be converted into a will by proving an animo testandi in the maker by parol evidence, the effect is, not only to change the legal character of the instrument, but to ingraft upon it one of the essentials of a will by parol in the face of our statute which requires all wills to be in writing."

[9] There is no ambiguity upon the face of the three papers under discussion as to the testamentary intent, and they evidence merely a gift from Vanlaw to Boyce and Adams—void, of course, because not delivered prior to the death of Vanlaw—and the trial court should not have admitted oral evidence to vary, contradict, or add to their expressed meaning. In re Kennedy, 159 Mich. 548, 124 N. W. 516, 28 L. R. A. (N. S.) 417, 134 Am. St. Rep. 743, 18 Ann. Cas. 892.

[10-12] If, on the other hand, there is an ambiguity existing by reason of .the word "Notes" on the envelope and the word "this"

in the letter, then it is patent, and is not · such an ambiguity as may be explained by parol, and the attempted disposition is void and must fail. Linney v. Wood, 66 Tex. 22, 17 S. W. 244; Crumbley v. Busse, 11 Tex. Civ. App. 319, 32 S. W. 441; Giddgins v. Day, 84 Tex. 605, 19 S. W. 682; Norris v. Hunt, 51 Tex. 609; Cammack v. Prather, 74 S. W. 355; Douthit v. Robinson, 55 Tex. 74; Pfeiffer v. Lindsay, 66 Tex. 123, 1 S. W. 265; Bassett v. Sherrod, 13 Tex. Civ. App. 327, 35 S. W. 316; Myers v. Maverick, 27 S. W. 952; Curdy v. Stafford, 27 S. W. 824; Stipe v. Shirley, 27 Tex. Civ. App. 97, 64 S. W. 1014. In Stevens v. Haile, 162 S. W. 1025, the Court of Civil Appeals construed an instrument contended upon the one·hand to be a deed and upon the other a will, and, in discussing ·this clause of the instrument, viz., "the delivery hereof not to occur until my death," declared the same to be ambiguous because the word "hereof" may have referred to the property described in the instrument itself, and used this language: "Counsel for appellant contend that, considering the entire instrument, the language referred to is not ambiguous; but we cannot sustain that contention. The word 'hereof' is defined by the Century Dictionary as meaning 'of or concerning this,' and the word 'this' is defined as 'a demonstrative adjective used to point out with particularity a person or thing present in place or thought.' When the word 'hereof' was written, the deed, and not the property, was present in place; but the property, and not the deed, may have been present in thought, and therefore the use of that word in that connection renders it uncertain whether it was intended to refer to the deed or the· property conveyed." Appellee contends in the instant case that the word "Notes" supplements the ambiguous word "this," and that the letter should be read "accept this note." In Crooks v. Whitford, 47 Mich. 283, 11 N. W. 159, it appears from the report of the case that a testator requested his executors "to sell and dispose of the following described land," but left out the description, and the court, speaking through Graves, J., said: "It is certain that it was not competent to resort to parol evidence to supply the absent matter. The case was not one for interpretation or construction, because there was nothing on which the power could be exercised, and, as there was no subject-matter to be construed or interpreted, there was no call for extrinsic facts to aid the office of interpretation or construction. The provision is a complete blank, and in.regard to the property the will is dumb. There· is nothing whatever on the face of the instrument to denote what real estate the testator had in view nor anything to incline the attention one way rather than another in search of it." Whatever the rule may heretofore have been in this state or in other jurisdictions, we think it is now settled in

Texas that, whenever the deceased has executed a paper which does not, upon its face, clearly evidence its testamentary character, it is not within the province of the courts to transform it by the aid of parol evidence into a will in contravention of a statute declaring that "every last will and testament, except where otherwise provided by law, shall be in writing," etc. And we think here is the chief infirmity in the appellee's case.

In construing the statute relating to wills in this state, Stayton, C. J., in Heidenheimer v. Bauman, 84 Tex. 174, 19 S. W. 382, 31 Am. St. Rep. 29, has definitely set the question at rest by interposing the statute as a bar to the admission of oral proof, except to explain a latent ambiguity, and as we understand the meaning of the term a latent ambiguity can never arise as to the question of testamentary intent. He says: "The statute provides that 'every last will and testament, except where otherwise provided by law, shall be in writing and signed by the testator, or by some person by his direction and in his presence, and shall, if not wholly written by himself, be attested by two or more credible witnesses above the age of fourteen years, subscribing their names thereto in the presence of the testator.' R. S. 1879, art. 4859; R. S. 1911, art. 7857. This statute applies to wills whereby either real or personal property is disposed of, and the purpose of it is to require every testator to leave evidence *in writing*, attested as the statute requires, of the testamentary disposition made of his estate, except in those cases in which nuncupative wills are permitted, in order that the *highest evidence of testamentary intention* might be furnished, and fraud and perjury prevented; and it matters not whether the bequest or devise be directly to the legatee or devisee or to a trustee who may be required to hold and administer it for a time for the benefit of the real beneficiary. In either case the will on its face, or by reference to some paper existing when the will is executed, and so referred to and identified as to become a part of it, must declare, not only what the bequest or devise shall be, but also who shall take it directly or beneficially through a trustee. If, after a will is executed, the testator desires to change parts of it or to add to it, this may be done by a codicil which must, however, be executed with the same formalities made necessary by the statute to the validity of testamentary papers. In the paper before us the beneficiaries are not in any manner pointed out, nor can it be claimed that this was done by any paper referred to and so identified as to make it a part of the will. The memorandum made by the person named in the will as trustee amounts to no more than would the oral declaration of the testator to the trustee, and the last paragraph in it, whether written by the testator or by the trustee at his dictation, suggests a doubt as to whether the preceding parts of the memorandum correctly expressed the wish of the testator as expressed orally by him to the person named in the will as trustee. The evidence introduced was offered for the purpose of showing *what the intention of the testator was* as to the disposition of the residuum of his estate, and not for the purpose of enabling the court to carry out an intention clearly expressed in the will, but which might be applied to more than one person or thing on account of a latent ambiguity; and, when offered for such a purpose, we know of no rule of evidence which justifies the admission of such testimony. To admit it and give effect to it would make a will, whatever the testimony of one or more witnesses may swear was intended by the testator, when the statute requires such intention to be manifested by a writing executed with the formalities prescribed. Parol testimony is admissible often to enable a court to give effect to an intention expressed in a will; but it is unnecessary in this case to enumerate the purposes for which such evidence may be received, for such evidence is never admissible for the purpose of showing a testator's intention by proof of his oral declarations of intent, either as to the persons who shall take his estate, or as to what particular part of his estate any one person was intended to receive. The existence of such a statute as that in force in this state ought to be deemed a sufficient answer to a proposition that such evidence as was admitted in this case ought to be admitted for the purpose of showing who the testator intended should be the recipients of his bounty, for there are no parts of a testamentary paper more important elements in its validity than those which name the beneficiaries and declare what part of the testator's estate each shall receive. While the language of the statute prescribing the requisites to a will is affirmative, it as fully denies testamentary effect to parol declarations as would it if it expressly declared that no testamentary disposition of property should be made in manner other than that prescribed. The reasons on which the requirements of the statute are based have been too often stated to require repetition, are founded on sound public policy, and require the rejection of such evidence as was received in this case. Whart. Ev. 992–994; Abbott, Tr. Ev. 84; Wig. Wills, 10–13; 1 Redf. Wills, 496–508; 1 Jarm. Wills, 409–413; Schouler, Wills, 567–569."

Inspection of the authorities cited by Judge Stayton in support of the rule announced by him will throw some light upon the issue in this case. The section from Abbott's Trial Evidence cited follows the discussion by that author of the general subject, "Extrinsic Evidence Affecting Wills," and section 81 announces the doctrine that the statute of wills, by requiring testamentary acts to be express-

ed and authenticated in writing, precludes us from treating oral declarations as a testamentary act, or even as any part of such an act; that every disposition which the testator makes must be embodied in a writing that conforms to the statute; that extrinsic evidence cannot establish a provision shown to have been omitted by mistake, nor even supply any essential or vital part left blank in a provision the frame of which was inserted by the testator. It is further announced in this section that a will may be construed in connection with another writing to which it refers; but it cannot, even by expressing an intention to do so, make an unattested instrument a part of itself so as to effect a testamentary disposition without compliance with the statutory formalities. Section 83 states the reasons for the liberal admission of extrinsic evidence; but section 84, specifically referred to by Judge Stayton, is, in so far as it relates to the facts of this case, as follows: "Reasons for its strict execution: On the other hand, it is to be considered that the rules allowing parol evidence in aid of the interpretation of contracts are not fully applicable to wills, for they rest on several reasons that are foreign to these instruments: (1) A will is not a transaction between parties but a silent and private act, and the principle of good faith which may bind a contracting party by what passed in conversation does not justify disposing of the rights of heirs and next of kin by what may have been foreign from their ancestor. (2) Nor is a will a grant or effective act during the testator's life, but a revokable expression of intention, made frequently under circumstances likely to involve secrecy, if not fickleness and change, and the law does not bind a man by his expressions of intention, much less by his oral declarations that he has expressed certain intentions in a revokable writing. (3) It is a matter of common observation that testators are instinctively disposed to shroud their testamentary acts in secrecy and disguise their intentions, and to baffle with equivocations or misrepresentations the importunities of the expectant and the inquisitiveness of the curious. The law regards this concealment as a right of the testator, and even positive deceit by him, however questionable morally, is not a legal wrong, unless fraud is accomplished by it. Therefore the testator's representations as to what he has or has not done, much more those as to what he intends, fail to afford any substantial presumption as to the testamentary act. (4) Besides this absence of reasons for admitting extrinsic evidence so freely as in cases of contracts, the objections to hearsay evidence apply in the strongest manner in many cases, and the fact that the controversy in which such evidence is offered usually arises between those who stood in very unequal degrees of personal intimacy with the testator, and that his own lips are sealed by death, render the resort to such evidence peculiarly liable to abuse, which it is the object of the statute to avoid by requiring every testamentary act to be expressed in a written and authenticated will."

As further bearing upon the effect of the statute relating to wills upon the admissibility of parol evidence to prove the testamentary intent, we quote from Grigsby's Legatees v. Willis' Estate, supra, as follows: "On the other hand, one who wishes to control the disposition of his estate after his death must adopt some lawful means for the accomplishment of his purpose. So, if a deed of gift devoid of testamentary words be found among the valuable papers of decedent, it cannot be given the effect of a will, even though it should be shown by parol that the maker believed and intended it as a will. To adopt such a rule would be dangerous because of the law requiring the delivery of deeds to render them effective. The maker of a deed is presumed to know that delivery is necessary to its validity, and so long as he retains possession is presumed not to have finally decided to execute it. If undelivered deeds found in the possession of the maker at death could be established as wills by resorting to parol proof of the maker's wishes, it would open the door to fraud and serve to defeat the purpose of the statutes requiring wills to be in writing, and prescribing certain safe modes of proof. Stilwell v. Hubbard, 20 Wend. [N. Y.] 46. For a similar reason parol evidence may not be resorted to for the purpose of ingrafting on a will the wishes of the testator not expressed in the writing, nor to change, modify, or eliminate any of its material provisions. 1 Jarm. Wills, p. 409. The rule governing the extent to which parol evidence may be resorted to in the construction and enforcement of such instruments is thus stated by Mr. Jarman: 'Extrinsic evidence is not admissible to alter, detract from, or add to the terms of a will, but may be used to rebut a resulting trust, or to remove a latent ambiguity arising from words equally descriptive of two or more subjects or objects of gift. Jarm. Rules of Const. rule 8; 1 Redf. Wills, 426, note.'"

[13, 14] In regard to the incorporation of the note by reference into the letter, it is our opinion (even if we are to consider the writing on the envelope as a part of the letter) that the reference is wholly insufficient. In the first place parol evidence was required to show that the note and letter produced in court were both inclosed in that identical envelope and found in the Vanlaw house. It will be seen that the note in no way refers to the letter. The word of reference or attempted identification on the envelope is "Notes," and in the letter it is "this." Then the complete reference is "this" "Notes." There is no attempt to specify the kind of notes, whether bank notes or promissory

notes, and, if the latter, there is no definite description or information, either in the letter or upon the envelope, as to their number (except that there is more than one), date, maturity, payor, payee, etc. In order to perfect and to conclude this ambiguous reference, appellee produced one note supplemented by parol evidence showing that it alone was found in the envelope with the letter. This evidence contradicts and varies the indorsement on the envelope that it contained "Notes." Under all the authorities we have found this reference is not sufficient to incorporate any note or notes. As was said in Bryan's Appeal, 77 Conn. 240, 58 Atl. 748, 68 L. R. A. 353, 107 Am. St. Rep. 38, 1 Ann. Cas. 393: " 'First, the paper must be in existence at the time of the execution of the will, and, secondly, the description must not be so vague as to be incapable of being applied to any instrument in particular, but must describe the instrument intended in clear and definite terms.' In a California case upon this subject this language is used: 'But, before such an extrinsic document may be so incorporated, the description of it in the will itself must be so clear, explicit, and unambiguous as to leave its identity free from doubt. * * *' In an important and well-considered English case, decided in 1902, the court uses this language upon this subject: 'But it is clear that, in order that the informal document should be incorporated in the validly executed document, the latter must refer to the former as a writing existing—that is, at the time of the execution—in such terms that it may be ascertained. * * * The document which it is sought to incorporate must be existing at the time of the execution of the document into which it is to be incorporated, and there must be a reference in the properly executed document to the informal document as an existing one, and not as a future document.' In the Goods of Smart [1902] L. R. P. D. 238." In the instant case the note is dated July 3d; the letter sought to be probated is not dated. In this condition of the record the jury must necessarily have presumed that the note was in existence before the letter was written. As we understand the rule this proof must appear from the face of the instrument itself. Quoting again from Bryan's Appeal, it is said: "Tested by the rules as thus laid down in the cases above cited and in numerous others that might be cited, the will in the present case fails to comply with the required conditions under which incorporation by reference can take place in the case of wills. In clause 12 of the will in question here a large sum of money is given to Mrs. Bennett, 'in trust, however, for the purposes set forth in a sealed letter which will be found with this will.' There is not in the language quoted nor anywhere else in the will any clear, explicit, unambiguous reference to any specific document

as one existing and known to the testator at the time his will was executed. Any sealed letter, or any number of them, setting forth the purposes of the trust, made by anybody at any time after the will was executed, and 'found with the will,' would each fully and accurately answer the reference, and, if we assume that the reference calls for a letter from the testator, it is answered by such a letter or letters made at any time after the will was drawn. The reference is 'so vague as to be incapable of being applied to any instrument in particular' as a document existing at the time of the execution of the will; 'the vice is that no particular paper is referred to.' Phelps v. Robbins, 40 Conn. 250–273. Such a reference as is made in the present will is, in fact as well as in law, no reference at all; certainly it is not such a reference as the rules under the doctrine of incorporation by reference require in the cases of wills." In the instant case it is contended by appellants that the $14,000 note appears not to have been written by Vanlaw, and hence the language, supra, that "any sealed letter, or any number of them, * * * made by anybody at any time," and Judge Stayton's statement that the purpose of the statute was that fraud and perjury might be prevented, are peculiarly applicable, and illustrate very forcibly the reason of the rule uniformly announced with regard to incorporation by reference.

[15, 16] Again: "A reference so defective as the one here in question cannot be helped out by what is called parol evidence, for to allow such evidence to be used for such purpose would be practically to nullify the wise provisions of the law relating to the making and execution of wills. We know of no case, and in the able and helpful briefs filed in this case have been referred to none, where a reference like the one here in question has been held to incorporate into the will some extrinsic document." To the same effect is the holding of Speer, J., in Allday v. Cage, 148 S. W. 838. The rule seems to be settled by the decisions of our own state that the declarations of the testator made before or after the date of the will, and relating to its execution, and not a part of the res gestæ, are not admissible. Kennedy v. Upshaw, 64 Tex. 411; Tynan v. Paschal, 27 Tex. 286, 84 Am. Dec. 619; Peet v. Com. & E. S. Ry. Co., 70 Tex. 522, 8 S. W. 203. Therefore the statements of Vanlaw at the time he executed the Geary will, to the effect that he "already had Adams and Henry fixed," were not admissible to establish the execution of a prior will, or to identify the note in question as one of the notes referred to on the envelope. In Re Young's Estate, 123 Cal. 337, 55 Pac. 1011, the Supreme Court of California construed a will wherein the testatrix provided that "two deeds" should be handed to her husband, and after his death they should go

to another. The court said: "An existing writing may by reference be . incorporated into and made a part of a will; but, before such an extrinsic document may be so incorporated, the description of it in the will itself must be so clear, explicit, and unambiguous as to leave its identity free from doubt. The identification of the paper must be had from a description given in the will itself; otherwise the will is not wholly in writing, as our law requires, but rests partly upon a writing and partly in parol. * * * Applying these familiar principles of construction, it is apparent, not only that the deeds are not referred to with sufficient definiteness to insure certainty in their identification, but that there is even a patent ambiguity in the very language of the will which attempts a designation of them. There shall be handed to C. H. Young 'two deeds.' Any two deeds executed by any person conveying any kind of an estate in any land would fill the measure of this requirement, so that to the admissibility of parol evidence to aid this clause there are two objections, each equally insurmountable—the first, that the description of an extrinsic writing must be so definite as not to require such evidence; the second, that parol evidence is never admissible to explain a patent ambiguity; * * * but, were these objections to the consideration of the parol evidence entirely removed, there are yet others equally fatal to the construction which the court in probate has put upon this clause of the will. There was no delivery of these deeds during the testatrix's lifetime. What validity they possess, then, comes from the will, and therefore if, by the act of the testatrix, title to these lands passed, we must find in the will both an intent to devise them and operative words to effect the intent. We are not here unmindful of the rule that permits reference to an extrinsic writing duly incorporated into a will for the purpose, not alone of determining the subject-matter of a devise, but even for determining the character of the estate conveyed. Fesler v. Simpson, 58 Ind. 83. But in the case just cited, and in all such cases, there must in the will itself be found a clear intent to devise and words legally sufficient to create a devise. If such words exist at all in this will, they are contained in this language: 'To C. H. Young, my husband, * * * shall be handet * * * two deeds. After my husband deatts the two deeds shall go to Katarina Muhr.' Assuming a proper identification of the two deeds, there is left in this language nothing of doubt or uncertainty. The directions are plain, explicit, and not to be misunderstood. The intention of the testatrix, then, was that two paper instruments, in form grant, bargain, and sale deeds of her lands in counties of Sonoma and Napa, duly signed and acknowledged by her and by her husband, should at the proper time in the administration of her estate be handed to her husband, and after his death be handed to Katarina Muhr. What effect would a compliance with the terms of these directions have upon the title to the real estate? Unquestionably none. For this reason it is strenuously urged that, as the law favors the construction which avoids total or partial intestacy, * * * and as it is not to be supposed that a testator in so solemn an instrument as a will would exact the doing of a vain and empty thing, it must be certain that this testatrix intended to devise some estate in these lands to the husband and cousin, and that the decree of distribution should do so accordingly. It is true that courts have always leaned to constructions which will avoid intestacy, and their swift willingness in this regard has passed into a rule of construction; but there are well-defined limits beyond which the courts have not gone, and beyond which they could not go without subverting all rules and leaving the interpretation of every will to the mere caprice and whim of the chancellor. One of these rules, firmly established and never departed from nor even criticised, is that the expressed intent will not be varied under the guise of correction because the testator misapprehended its legal effect. The testator is presumed to know the law. If the legal effect of his expressed intent is intestacy, it will be presumed that he designed that result. The inquiry will not go to the secret workings of the mind of the testator. It is not, what did he mean? but it is, what do his words mean? In Bingel v. Volz, 142 Ill. 214, 31 N. E. 14, 16 L. R. A. 321, 34 Am. St. Rep. 64, it is well said: 'The purpose of construction as applied to wills is unquestionably to arrive, if possible, at the intention of the testator; but the intention to be sought for is not that which existed in the mind of the testator, but that which is expressed in the language of the will. * * *' The case thus presented is one where the expressed intent of the testatrix is plain, but where a full performance of the acts which she has directed will amount in law to nothing. The testatrix, it may be assumed, did not understand the legal effect which would follow a compliance with her will, or thought that the legal effect would be other than it is. But a court, for this reason, is not justified in speculating over what may have been in the testatrix's mind, and in substituting what it may have believed to have been her intent in place of the directions which she has actually employed. The inquiry of the court in construing the will comes to an end when the intent has been discovered from the language of the will. Its duty is then limited to giving effect to that intent so far as may be without doing violence to express law or the mandates of public policy. It is never at liberty to supply omissions or to wrest language from its plain import and give it such a meaning as it may be guessed the testatrix would have intended

if she had known that her own efforts to create a legal devise had resulted in failure. In re Walkerly's Estate, 108 Cal. 659, 41 Pac. 772, 49 Am. St. Rep. 97. Here, to repeat, there is no doubt as to the language and its meaning. The testatrix merely mistook the legal effect which would follow a compliance with her directions. While no form of expression is required to create a devise, and while considering that wills are frequently made by ignorant people in a great extremity of sickness, and under an impending fear of immediate death, and while, therefore, much liberty is and should be shown in construing the terms of such instruments, in every case some words must be employed from which, under the rules of law, an expressed intent to devise particular real estate must be found in the will itself; otherwise the court is not carrying out the last will of the deceased, but is making testamentary disposition of his property for him, not such disposition as the testator made, but such disposition as the court thinks he would have made. This can never be permitted. We may well leave this branch of the case with the following quotation from Buller, J., in the case of Dacre, 1 Bos. & P. 251: 'I agree that a testator may express his intention by what words he pleases, and the court is so to expound his expressions that every word may stand, if possible. The court is to pronounce according to the apparent intent of the testator; but that intent must be found in the words of the will, and is not to be collected by conjecture dehors the will, or, as my Lord Chief Justice expressed himself, * * * as the question has not been asked of the testator, it is but conjecture what would have been his answer.' "

[17] During our investigation we frequently find language to this effect, used by the judges: "It is competent to admit parol evidence, as it is sometimes, though not very accurately, expressed to explain a will, by showing the situation of the testator in his relation to persons and things around him, or, as it is often expressed, by proof of the surrounding circumstances, in order that his will may be read in the light of the circumstances in which he was placed at the time of making it. * * * As he may be supposed to have used language with reference to the situation in which he was placed to the state of his family, his property, and other circumstances relating to himself individually and to his affairs, the law admits extrinsic evidence of those facts and circumstances to enable the court to discover the meaning attached by the testator to the words used in the will, and to apply them to the particular facts in the case. For this purpose very material facts that will enable the court to identify the persons or things mentioned in the instrument is admissible in order to place the court whose province it is to determine the meaning of the words

as near as may be in the situation of the testator when he used them in making his will." Hunt v. White, 24 Tex. 652; Packard v. Miranda, 146 S. W. 211; Busby v. Lynn, 37 Tex. 151; Cleveland v. Cleveland, 89 Tex. 450, 35 S. W. 145; Peet v. Commerce, etc., Ry., 70 Tex. 528, 8 S. W. 203; Clark v. Cattron, 23 Tex. Civ. App. 51, 56 S. W. 100; Allday v. Cage, 148 S. W. 838; Winfree v. Winfree, 139 S. W. 36. But it will be observed that in all such cases almost without an exception, either in this state or elsewhere, the language is used with reference to the construction of the instrument in so far as it seeks to determine the identity of the devisees and the property devised to each. In other words, the rule applies *after* the instrument has been determined *to be a will*, because, as said in Hunt v. White, 24 Tex. 652, "his intent must be ascertained from the meaning of the words in the instrument, and from those words alone;" and, further: "It is insisted that it can be in the exercise of the equitable powers of the court to grant relief in cases of accident and mistake, and that the court may reform the will so as to make it express the intention of the testator as deposed to by the witnesses; but it must be observed that the power of a court of chancery to grant relief in cases of mistake in written instruments does not go to the extent of adding to or changing the nature and legal import of the writing. That would be to contravene the rule, which obtains as well in courts of chancery as in courts of law, that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument. The case of wills does not constitute an exception * * * of this rule." Hunt v. White, 24 Tex. 651. "In this way extrinsic evidence may aid in arriving at the intention of the testator by showing in what sense he employed the language he used in his will, and for this purpose, that is, to enable the court to understand the meaning of the words in the instrument, parol evidence is admissible, but never for the purpose of proving other language declaring his meaning than that which is contained in the instrument itself. That would be, in the language of a learned authority (2 Phil. Ed. 305) 'inconsistent with the rule which reason and sense lay down, and which has been universally established for the construction of wills, namely: That the testator's intention is to be collected from the words used in the will, and that words which he has not used cannot be added.' " A great many authorities have been cited in the brief of appellee announcing in substance the rules quoted from White v. Hunt. We have carefully reviewed such of these as were accessible to us and have arrived at the conclusion that these rules do not apply until after the court has decided that the instrument or instruments under consideration were executed with a

testamentary intent, and therefore constitute a will. We have not passed that milestone in this case. As said in the Heidenheimer v. Bauman Case, and others heretofore discussed and quoted from by us, to permit extrinsic parol evidence of declarations, facts, and circumstances to determine the nature and character of the instrument itself would be opening a door for fraud, and for the encouragement of perjury, and would permit an instrument clearly not a will upon its face, as in this case, to be converted into a will by the evidence of outside or interested parties.

There are a number of other questions submitted for our consideration in the briefs of appellants. Among these is that raised by the assignment relating to the Geary will, and the effect of that will as a revocation of the will under which appellees claim. Since we have construed the first three papers not to be a will, it is unnecessary for us to consider this assignment, nor do we think it incumbent upon us to consider any of the remaining assignments presented.

On account of the errors which we have discussed it is the judgment of this court that the judgment of the lower court be reversed and rendered in so far as it admits to probate the letter, envelope, and $14,000 note; but, in so far as the judgment probates the Geary will, it is affirmed.

Reversed and rendered in part, and affirmed in part.

HENDRICKS, J., dissents in part, but concurs in the disposition made of the case.

### On Motion for Rehearing.

HALL, J. Both parties have filed motions for rehearing. Appellant's motion raises no new question, and, after carefully considering the various grounds set up in connection with our former opinion, we think we have correctly decided the issues.

Appellant's motion insists that we should not have affirmed that part of the judgment admitting the Geary will to probate. The Geary will is as follows: "The state of Texas, county of Moore. July 5, 1911. Know all men by these presents that E. Vanlaw has wild John Geary Seven Thousand Dollars at My Death the Rest of my property to my bodley airs, written by F. Y. Adams. Witness by F. Y. Adams, Bob Hammett. [Signed] E. Vanlaw."

[18-20] The appellee's replication first alleged that the Geary will had been offered for probate in a separate proceeding and probate thereof refused by the district court of Moore county. In a separate paragraph it is further alleged that said will was not intended to revoke the former will, consisting of the promissory note, envelope, and letter set out in the original opinion, but declares that the Geary will was to provide a legacy for John Geary, and for a disposition of the balance of his estate after the payment of the legacy, and prays "that, if said will was so executed, and it is the judgment of the court that the former judgment herein pleaded is not conclusive, then your applicant prays that the said will be admitted to probate as the will of E. Vanlaw, deceased, in connection with the probate of the instrument offered by your applicant, and that the court inquire into the manner of the execution of said instrument and the circumstances of its execution, and, if it be found that the same was intended by the said E. Vanlaw as his will, then the same be admitted to probate in connection with the probate of the instruments offered by your applicant, to the end that said two instruments may be construed together, and the intention of the said testator as expressed in said two instruments be ascertained." The proceedings in the county court are not made part of the record, and every presumption must be indulged in favor of the validity of the judgment of the district court. The brief of appellant in this case nowhere raises the question that the judgment of the district court in probating the Geary will is not supported by proper pleadings and evidence, and the only assignment bearing directly upon the question is appellant's forty-first assignment of error, as follows: "Said judgment is further erroneous upon its face for that it admits to probate the John Geary will, which, by its terms, revokes all prior testaments, documents, and at the same time admits to probate the envelope, promissory note, and other paper tendered as a whole and as the will of E. Vanlaw, and such note bears a prior date, so that judgment contradicts itself." It is clear that this assignment does not raise the question of the right of the court to probate the Geary will because of a dearth of pleading or evidence. We think the pleadings are sufficient, and a want of evidence or an insufficiency of evidence to sustain the judgment is not such fundamental error as to require a consideration without the matter having been brought to the attention of this court by proper assignment.

[21] G., H. & S. A. Ry. v. Clark, 21 Tex. Civ. App. 167, 51 S. W. 276; Peevehouse v. Smith, 152 S. W. 1196: Appellant has raised the question too late to entitle it to consideration. Even if the note, envelope, and letter could be held to be a will, we believe that the Geary will had the effect of revoking it, provided the Geary will was executed afterwards. Dougherty v. Holscheider, 40 Tex. Civ. App. 31, 88 S. W. 1113.

Appellee's motion for rehearing is also overruled.

HENDRICKS, J., dissents in part.

HUFF, C. J. (concurring). It is not my purpose to try to add anything to the opinion of Judge HALL, as I regard his conclusions

well supported by authorities and by cogent argument; but it may not be improper for me to express my view upon the interpretation of the instruments sought to be probated. In my judgment the language of the letter is not testamentary in character. I find nothing in the face of the instruments to indicate a testamentary purpose. Such purpose can only be inferred from the facts of the death of Vanlaw some four months thereafter, and that the letter and note were not delivered or presented for acceptance. To my mind it is clear from the instruments it was not a posthumous donation or gift. Nearly, if not all, the authorities are to the effect that parol testimony cannot be resorted to for the purpose of establishing such a character. In some of the cases cited there is an indorsement on the envelope or wrapper, such as "will," "codicil," and the like. In most of these cases some such expression as, "It is my wish or desire that you have," "wish to give you." These terms indicate a purpose to give in the future, and not a present purpose. The question in such cases then arises, is it the purpose to give in view of or after death? In such cases the instruments do not answer the question with certainty, and hence facts aliunde the instruments are resorted to in order to determine the intent of the deceased as to when it shall be effective. There is no word indorsed on the envelope in this case indicating that a will is inclosed. Upon picking up the letter one would not expect upon reading the indorsement "Notes" to find a will. Upon opening and finding a note a will would not yet be suggested to the mind. In reading "accept this" suggests that the maker's purpose was to present for acceptance, and a present purpose is at once conveyed. It is not the language of a wish to give in the future; the doubt raised is that it was not actually presented for acceptance, and that some months thereafter the maker died. The doubt is not raised by the instrument itself but by aliunde facts. The posthumous intent so raised contradicts the clear and manifest meaning of the letter. The statute provides wills must be in writing. To be a will it must be a purpose to dispose of property after death. An instrument which does not do so is not a will. If it is clear from the instrument that such disposition is not made, that ends the inquiry. If the language is doubtful as to whether this is a testamentary purpose, inquiry may be prosecuted and other sources examined to find the true intent of the language used in the instrument. The inclosed note is payable fifteen after. This is payable on demand as we interpret it, and must be presented to the donor for payment, and is so indicated by the instruments themselves. That the note was not delivered is no more evidence of a testamentary intent than the presumption that its delivery was delayed, or that the maker had recanted his generous purpose. It was not

delivered for some reason, and, if the deceased could speak, he might give a very cogent reason for not presenting or delivering the note. I believe to give the statute of wills the construction contended for in order to probate these instruments as a will would open the door too wide for fraud and defeat a wise and just law which wisdom, from experience, has adopted.

If the rule is to prevail that the instruments should be read together and construed as one instrument, I then think under the statute it cannot be admitted to probate. It is not attested as required by law. It is not wholly written by the testator, but is partly printed. If the letter is alone to be treated as the will, it gives nothing; if the word "this" refers to the note, then the note becomes part of the will, and is only a general legacy, which is created by the terms of the will to be carved out of the estate, and is the amount named in the will to be given. It is therefore necessary that the note be read as part of the will in order to make it the gift of anything, and, in thus making it part of the will, the will is of no effect because of the statute which requires the testator to write all of the will. As I understand this case, the rules with reference to incorporation are really unnecessary in disposing of the questions at issue. Incorporation must refer to some instrument then in existence. The instruments in this case, to constitute a will, must be considered as one instrument, and contemporaneous documents, making a whole. To make it a devise of anything, they must be so considered, and when so considered there is no will under the statute.

HENDRICKS, J. (dissenting in part). The following instruments and whether the same meet the requirements of a holographic will, constitute the main issue in this record. I quote from appellant's brief:

"(1) An envelope on which is written horizontally the words 'Henry Boyce,' and across the end the word 'Notes.'

"(2) A sheet of paper apparently taken from a small writing tablet, and on which was written the words: 'Henry, please except this you & F. Y. Adams for the kindness shown me.'

"(3) A promissory note prepared on a printed blank, a copy of which, putting script parts in italic, is as follows:

"'$14,000    Dumas Texas, *July the 3*, 19*11*

"'*Fifteen after date* after date, for value received, *I*, we or either of us promise to pay to the order of *F. Y. Adams & Henry Boyce Fourteen Thousand Dollars* dollars, with ——— percent interest per annum thereon from ——— until paid, interest payable annually, and if not paid to bear the same rate of interest and if default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection then an additional amount of ten percent on the

principal and interest of this note shall be added to the same as collection fees. The makers and endorsers of this note hereby severally waive demand of payment, notice of nonpayment, protest and notice of protest and hereby consent that time of payment may be extended from time to time without notice hereof.                    E. Vanlaw.

"'Due ......

"'No. ......

"'P. O. ......'"

I agree with the majority of the court upon the disposition of the cause that the above instruments do not constitute a holographic will, upon one ground only (discussed later), dissenting, however, from the majority on the question of testamentary intent; and disagreeing, further, with Associate Justice HALL on the question of incorporation by reference of the note in the other instrument as an applicable principle destroying said instruments as a will. Upon the question of testamentary intent, candor actuates me in saying that it is with some hesitancy that, as applied to the foregoing instruments, I pronounce testamentary intention as being susceptible of judicial proof in order that said instruments may be declared a holographic will. The forcible presentation by the majority, and the elaborate opinion of Justice HALL, and the grounds of policy advanced upon which the proposition of invalidity is based on this question of posthumous intention, exhaustively cover that side of the controversy and that view of the question; however, I consider the great swing and tendency of the American and English decisions against the view therein advanced, and, whenever and wherever the question has been presented, has been under statutes defining wills, in substance the same as our statute, both in England and in America. I reproduce some of the cases cited by appellee, which I am inclined to think indicate the sweep of the law in the direction taken in this opinion, on the question of testamentary intent and applicable to all the documents propounded for probate.

In Wareham v. Sellers, 9 Gill & J. 98, by the Court of Appeals of Maryland, the following instrument was offered for probate by the proponent and denied by the trial court: "This will certify that I do assign, and gave all my personal property unto George Wareham—that is to say, one silver watch, one chest, one beaurough, and some carpenter's tools, besides two notes of hand, one $200 and one of $89, and $18 book account. Signed by me in the presence of Thomas Sater. [Signed] Phillip Sellers." The contestant in that cause "admitted that no particular form of expression or execution was essential to constitute a will, yet that a testamentary disposition should appear upon its face, or it should seem to refer in some mode to the death of the maker"; the proponent contending that "the paper

contained intrinsic evidence that it was made as a will." The discussion and the issue of testamentary intent is obtainable from the briefs; the Court of Appeals merely reversing the decree of the orphans' court, ordering that court to "reinstate the petitioner and receive the testimony offered by him and proceed to a hearing and trial of said cause, as to law and justice shall appertain."

The Supreme Court of North Carolina, in the case of Outlaw v. Hurdle, 46 N. C. 150, had under consideration the following instrument: "It is my wish and desire that my good friend and relative Dr. Joseph B. Outlaw, have all my property of every description. [Signed] David Outlaw." The Supreme Court of that state said: "It is a very grave question. Taking all the allegations of the propounder to be true, is the script testamentary? A disposition? In plain English, did the deceased mean to dispose of his property after his death by the force and effect of that very paper? We think he did. As it embraces all his property of every description, it is clear it was not intended as a gift inter vivos, * * * and, as he most unquestionably intended that it should have some effect, it is manifest that his intention was to make a disposition of his property, to take effect after his death, by the force and effect of that paper. *. * * So that, besides the paper itself, we have the facts, as found by the jury, that the deceased did not treat this as a paper such as one would throw into the street, but he treated it as a valuable paper, put it carefully away among his bonds, in his * * * trunk, and it was there found at his death. It is obvious, therefore, that he intended, by the force and effect of this paper, to dispose of his property after his death. ,He intended it to be his will."

The case of Clarke v. Ransom, 50 Cal. 599, involved the question of testamentary intent as applied to the following instrument: "Dear old Nance: I wish to give you my watch, two shawls, and also $5,000.00. Your old friend, E. A. Gordon." The Supreme Court of California said: "On its face there is nothing to indicate that it was intended to be testamentary. The full name of the beneficiary is not mentioned, nor is there any reference to the anticipated death of Mrs. Gordon." This instrument, according to the opinion of the court, depended upon oral evidence as to the situation of the donor, relationship to the donee, and identification of the latter as a "valued" friend of the former, stating: "It is well settled in this country and in England, first, that in determining whether the instrument propounded was intended to be testamentary, reference will be had to the surrounding circumstances, * * * and, second, that if it shall appear under all the circumstances that the instrument was intended to be testamentary, the court will give effect to the intention," etc. The Chief Justice of the Supreme Court of

California dissented from the opinion of the other four judges.

The case of Tozer v. Jackson, reported in 164 Pa. 373, 30 Atl. 400, embodied for probate the .following instrument: "High, James Rogers, do give to John Jackson, Sr., my property known as Penargyl hotel, and the land adjoining Penargyl in Northampton county, P. A. [Signed] James Rogers." The Supreme Court of Pennsylvania said: "How could there be any more direct, emphatic, and positive expression of a purpose on the part of James Rogers to give the property described to John Jackson, Sr.? * * * And no legitimate contention can arise upon that aspect of the subject."

In the course of a review of numerous decisions involving imperfect wills, some of which I have cited in this opinion, and following ·a review of the case of Cocke v. Cocke, 1 Prob. & Div. 241, which seems to be a leading English case on this subject, the Supreme Court of Pennsylvania further said: "Here the deceased, instead of destroying the paper, as he would necessarily have done if he did not intend it to become operative, preserves it, incloses it in an envelope, addresses the envelope to the person who is named as a donee, and places it in a conspicuous position where it would certainly be discovered, and then takes his life. It is impossible to conceive of a stronger purpose and intent." This court commented upon the form of the instrument attempting to convey real estate, which, on account of its form, could not possibly have that effect until after the death of James Rogers, as a circumstance indicating effect after death. The statute of wills of England, Victoria 1837, effective 1838, amending the old statute, was in effect when the case of Cocke v. Cocke was decided in 1865 by the Court of Probate and Divorce of England, the opinion rendered by Sir J. P. Wilde; also the case of Robertson v. Smith & Lawrence, L. R. 2, P. & D. 43, decided by the same court opinion rendered ·by Lord Penzance in 1870. The latter case involved this instrument: "I hereby make a free gift to Maria R. of sixty pounds and to John V. of fifty pounds, being the sum deposited by me," etc. And parol evidence of the surrounding conditions was admitted to show the intention to make a testamentary gift. The former case, Cocke v. Cocke, embraces for consideration this instrument: "I wish myn sister, Louisa Cocke, of 104 York Road, Lambeth,· to have my Schering (Charing) Cross bank book for her own use. December 7, 1865." Sir J. P. Wilde said: "The only question raised with respect to it is whether it is meant to be testamentary. In order to form a proper judgment, it is very material to look at the words written and the acts done by the testatrix in the light in which a person of her imperfect condition would be likely to regard them, and not at-tach anything like a technical meaning, of which she was. ignorant, to the language she has used. The expression, 'I wish myn sister to have,' appears to me to imply, 'I wish her to have after my death,' because when she wrote these words she was ·dangerously ill. * * * If she had merely wished to make her sister a present, she would not have taken the trouble to write anything at all, but would simply have handed over the bank book to her, etc. It is undoubted law that, whatever may be the form of a duly executed instrument, if the person executing it intends that it shall not take effect until after his death, and it is dependent upon his death for its vigor and effect, it is testamentary." As stated, while the English decisions, except the last quoted from, are not accessible to us, but, from the annotations and other decisions appropriate on this subject, we infer that the cause of Cocke v. Cocke is considered a leading case. It is noted that the English judge in this instance, deducing the. implication of a causa mortis intention of the donor, did so "because when she wrote these words she was dangerously ill and did not expect to live," etc., resorting to parol proof for that purpose. If the promissory note, though written wholly in the handwriting of Vanlaw, and found in his tobacco box, without any other explanatory features in connection with it, payable to Adams & Boyce, were as indicated, truly it would not be a will. However, we can infer these steps clearly from this record: That he executed the promissory note, partly printed and partly written, and the writing, "Henry, please except [accept] this, you and F. Y. Adams, for the kindness shown me." (I inserted the commas before "you" and after "Adams.") He placed the note and the other instrument in an envelope and sealed the same. Horizontally he wrote the name "Henry Boyce" on the envelope, and across the end of the envelope the word "Notes." That he placed the same in a receptacle in his home in Moore county. Conclusively the intention to give is manifest; the only question being whether in præsenti or in futuro—now or after death. There is a principle of construction which seems never to have been denied; that is, the law favors the interpretation to avoid total or partial intestacy, and "the swift willingness in this regard has passed into a rule of construction." As seen from the foregoing authorities and others, some of the courts imply a testamentary intent and aid it with oral proof; some of the decisions indicate that, though the instrument is not indicative of testamentary intent, parol proof though is admissible for that purpose; some of the authorities suggest that, where the instrument is doubtful, susceptible of two interpretations—one of a present gift, as well as a gift after death, with parol proof aiding the construction of testamentary

intent, and not detracting from it—the instrument constitutes a will. We take it the contervailing theory is, as to the instruments directly involved, that there is nothing here to imply testamentary intent from the face of the instrument, and that there is everything implying a gift inter vivos; that the promissory note in connection with the other instrument signed by Vanlaw indicate a gift in præsenti.

I deduce from the foregoing decisions, or at least some of them, that if, from the subject-matter, or from the form and manner in which the donor manifested his dispositive intention, if an implication of testamentary intent may be inferred, though it may also suggest an intent inter vivos, parol evidence is always admissible. In the Maryland case the man gave all his personal property, and the instrument indicated a present gift as well as after death; in the North Carolina case the donor gave all of the real and personal estate. The instruments were susceptible of a present as well as a testamentary gift. It is, however, unusual for a donor to give all his property in his lifetime. Lord Wilde, in the case of Cocke v. Cocke, commented on the unusual act of the donor giving a bank book during life. Something is said that the words "please accept" is suggestive of a present dispositive intention, and that the note indicates a present payment or gift. Without pursuing the subject too lengthily, in considering all the instruments, I believe the dispositive intention of a testamentary nature may be implied, considering the matter as a whole, that is, by the execution of said instruments by Vanlaw, placing the same in the envelope, and sealing the latter with his inscription and indorsement upon the back thereof, and taken in connection with the further fact that it is a demand note for the sum of $14,000. It is unusual for a man to dispose during his lifetime of all his personal property, though he may use words indicating a gift in præsenti; the same is applicable to the disposition of all of a man's real estate, though the language, literally construed, also indicates a present gift. It is unusual for a donor to give a bank book during life—the nature of the gift has a strange aspect—so I think it is a very rare occurrence, exceedingly so, for a man to make another a gift of a demand note; it contravenes common experience to say that one in making a gift, placing the power in the donee to compel the donor to pay the immediate obligation, intends it as a present gift. When Vanlaw wrote, "Please except this you and F. Y. Adams for the kindness shown me," of course he intended to say, "Please accept this, you and F. Y. Adams, as a gift, for the kindness shown me." Whether he intended them to accept the gift after death, or in præsenti, we may say is doubtful by construction of the implied meaning of the instruments. The way I view it the incident of a gift by one to another of an obligation practically payable on demand, in this case of $14,000, with attorney's fees a part of the note, and necessarily paid out of the assets, if the donor had not the ready money to meet the obligation upon demand, excludes more the idea of a gift in præsenti, and is more significant of the idea that the donor meant to give the amount of the note after death; and being of doubtful construction as to the intention of the donor when aided with parol proof as to the situation of the parties, if the instrument then further excludes a gift in præsenti, to that extent it is testamentary and a will. When you resort to parol proof, the face of the note is practically two-thirds in amount the value of the donor's estate, excluding his debts, and that with this aid, and other incidents corroborative of the man's meaning, it clearly excludes the idea that Vanlaw intended to give Boyce and Adams an obligation during life which would practically absorb his estate, unless you infer it was the act of a lunatic.

In an instrument as to which, from the subject-matter and the nature of the gift, it could be implied that the gift is incompatible with the idea of a present assignment (though by another interpretation it may be compatible with a present gift), the doubtful meaning of the instrument may be aided by parol testimony to ascertain the real intention of the donor. Justice Stayton, in the case of Heidenheimer v. Bauman, 84 Tex. 174, 19 S. W. 382, 31 Am. St. Rep. 29, had no record similar to this under consideration in writing the opinion in that cause, and the real question decided, however eminent the judge, and the real record imaged in the judge's mind when deciding it, should be considered in attempting to apply the language of that judge to a different question. Justice Stayton did, however, say in that cause: "*Parol testimony is admissible often to enable the court to give effect to an intention expressed in a will; * * * but it is never admissible for the purpose of showing a testator's intention by proof of his oral declarations of intent, either as to the persons who shall take his estate or as to what particular part of his estate any one person was intended to receive.*" Where clearly expressed, when testamentary intent is involved, which Justice Stayton did not have in view, you do not need parol proof; when doubtful it is necessary and always admissible in will cases.

I disagree, however, with appellee in the assertion that the cause of Crain v. Crain, 21 Tex. 790, decided by Chief Justice Hemphill, is of great value in determining this immediate question in his favor in this cause. In that case the plaintiffs claimed that certain deeds were unofficious wills in contravention of the statute of forced heirship. The defendant contended that they were deeds conveying the property in præsenti. The condition of the pleadings and the attitude of the liti-

gants were such that, upon the jury's finding that they were instruments of a testamentary nature, in violation of the disinherison statute, and not conveyances of a present estate, the Supreme Court merely held, the formalities with reference to the execution of the instruments not having been contested, that the instruments were of a testamentary nature, and partially void and partially valid, conveying a one-fourth estate, instead of all of the property. The court, in saying that they were instruments of a testamentary nature, was not deciding that the deeds in that record, if they had been contested under the statute were wills in compliance with our statute of wills. I rather concede that some of the other Texas cases cited by appellee, where deeds were construed wills, tend to sustain his contention as to testamentary intent, for the reason that in some of those causes, while language was used to show that the possession of the estate was postponed to a time after the death of the donor, and the donor had the use of the property during life, however, the title to the property, according to the terminology of the instrument, really passed in presenti, at least so I view it; but evidence was permitted to be introduced to show that the title was also testamentary. The fact of sealing instruments in an envelope, and addressing the latter to the intended donee, and retaining such envelope and instrument therein inclosed in the possession of the donor, in some receptable, while it is proof of a fact in parol, is deemed by all the courts as a circumstance of significance, aiding the testamentary intent of the instrument in which the property is intended to be given.

This logically brings me to the point wherein according to my conception of the law, this instrument cannot be construed as a valid will under the statute. The doctrine of incorporation by reference I do not believe applicable to the instruments in this record. The Supreme Court of Pennsylvania, in the case of Fosselman v. Elder, 98 Pa. 159, had under consideration a sealed envelope, found among the papers of the deceased, on which was written the following words, addressed to the donee: "Dear Bella: This is for you to open." And when opened the following was found: "My wish is for you to draw this $2000 for your own use should I die sudden." The envelope contained a certain note for $2,000. That Supreme Court did not have under consideration the question of incorporation by reference; but it did have the natural sequence of the writings, and were of the opinion "that the inscription on the envelope should be read as the preface of and in connection with the paper inclosed therein, and that they altogether constitute a valid testamentary disposition of the accompanying note operating as a codicil to the will of the testatrix." The court also said: "The natural order of reading ought

to control, and that is, the name of the party addressed, first, and then what is written, or concerning him." The note in this record is not a specific legacy, but, if a valid 'will, would have to be construed a general legacy, chargeable upon the estate of Vanlaw. The "please accept" instrument is incomplete and practically meaningless without the general legacy. Appellee construes this instrument, if we understand his brief correctly, as a part of the transaction of the execution of the note. If the note were executed at the time the other paper was also executed, I mean contemporaneous in law, as a part of the will-making act, all the parts are necessarily construed together as ingredients of the testament. This, as I view it, is not incorporation by reference within the legal meaning of that doctrine under the authorities. This is making a will all at one sitting. If the donor had written, "Henry, you and Adams, please accept the following for the kindness shown me. E. Vanlaw"—then the following language on the same sheet of paper would have been, "To Henry Boyce I bequeath $7000 and to F. Y. Adams, I bequeath the same amount;" and, if the latter language were printed, I am unable to conceive by what process of reasoning the instrument complied with the statute as a holographic will, whether the "following" was signed or unsigned. I admit that some of the authorities, from the facts, indicate that an unattested document made immediately previous to the writing of the will may be incorporated by reference into the will, but in any case accessible to the writer you are not required to go to the incorporated document to determine whether the instrument was a will, the incorporation of the document by reference means bringing it into the will; the will is already made in so far as the intent to give after death and the other formalities are concerned, and the antecedent memorandum is drawn in by reference. If A. were to write that he gave to B. "the property evidenced by a printed memorandum, made by me at the time of signing this instrument," and the printed memorandum was an instrument bequeathing a legacy of $14,000 to B., and though the memorandum were signed, I am unable to conceive the transaction a will—it is partly written and partly printed.

Incorporation, of course, is a will-making act, performed at the same sitting of the making of the will; but making a will at the same sitting and writing it all at that time is not incorporation, and I so construe the transaction here—all acts construed together as will-making acts performed at the same time, and all necessary to be taken together as a valid will, but all when construed together is not such.

Neither do I think that the Geary will, under the jury's finding and the record here, referred to in the court's opinion on the motion for rehearing, on the proposition of

revocation, notwithstanding the residuary clause, revoked the Boyce-Adams instrument, if the latter were a will. I am convinced that the declaration made by Vanlaw at the time he executed the Geary will was clearly admissible for that purpose; it was res gestæ of a transaction of the making of that instrument. I am not holding that this testimony of his declaration, in substance that he had Boyce and Adams already fixed, was admissible to prove the testamentary intent entering into the Boyce-Adams instrument, but as a declaration to prove that the Geary will was not the only will of the testator; the declaration, having been made when the latter will was made, was competent.

The Supreme Court of Colorado said: "The two are to be taken together as forming one will, unless the circumstances under which the last will was made prohibits such a condition, or the conditions of the two wills are so repugnant and inconsistent that they may not stand together. In this connection we will say that the court erred in striking out the testimony concerning the conversation that took place at the time of the execution of the last will, and the testimony of the witness Hanington. The conversation was a part of the subject-matter, and was admissible for the purpose of determining the intention of the testator in relation to the will which was then in existence, and of the facts and circumstances attending the execution of the wills. 1 Underhill on Wills, p. 39:" Whitney et al. v. Hanington, 36 Colo. 407, 85 Pac. 86. See, also, In re Venable's Estate, 127 N. C. 344, 37 S. E. 465, quoting section 407 (2d Ed.) Schouler on Wills; Gordon v. Whitlock, 92 Va. 723, 24 S. E. 342; In re Pilsbury's Will, 50 Misc. Rep. 367, 99 N. Y. Supp. 68; Williams v. Miles, 68 Neb. 463, 44 N. W. 705, 96 N. W. 151, 62 L. R. A. 383, 110 Am. St. Rep. 431.

I do not construe the residuary clause as a nullity, according to the contention of appellee, but think that the jury were entitled to consider Vanlaw's age, his unmarried state, the short intervening time between the making of the two instruments, and the testimony of the declaration indicated for the purpose of finding whether the last will revoked the former, which is always a question of intent. If not revoked, the two instruments are construed together—the last in the nature of a codicil.

I am also inclined to think that the court is in error in affirming the judgment of the lower court, admitting the Geary will to probate. I construe this record in its travel from the county court to this court as solely embodying, in so far as the question of probate is concerned, the Boyce-Adams will exclusively. The transcript from the county court to the district court excludes the idea that the Geary will was used for any other purpose in the county or district than one of proof of revocation by the appellant, Maris, of the Boyce-Adams will. In the district court the proponent of the Boyce-Adams will, by supplemental pleading, averred that the Geary will, upon an appeal from the county court of Moore county to the district court of that county, had been denied probate by the latter court in a different proceeding between the appellant, Maris, and the beneficiary, John Geary; further stating that, if the court in this proceeding did not construe such former judgment as res judicata, said Geary will be admitted to probate with the Boyce-Adams instrument. There is no proof of the former judgment—simply an averment by the pleader—and in the condition of this record I am constrained to believe that the same pleader has not invoked the jurisdiction of the district court, and the same is not shown in order that the Geary will could be probated; and it could not be presumed, in the state of the record, that the district court was acting in an appellate capacity for the purpose of probating said will. I agree with the court that a correct judgment in this case is a rendition of the trial court's judgment as to the Vanlaw-Boyce-Adams instrument, but think that the judgment probating the Geary will by the district court of Moore county should be reversed and remanded, and respectfully dissent from the reasons and findings of the majority to the extent herein indicated.